| 14 501 |
| 62 427 |

### Jones *against* The Ætna Insurance Company.

Though it is a general rule, that the interpretation of a contract is to be governed by the law of the country where the contract was made and the parties resided, and the mode of enforcing it, by the law of the place where the action is brought; yet *it seems*, that when the principle on which a suit is to be sustained, depends upon the question who is the owner of, or has the legal title to, the property in controversy, the law which determines this question, is to determine also in whose name the action is to be brought.

If otherwise, still where our law recognizes rights derived under the laws of a foreign government, it will not suffer them to be defeated, or essentially varied, by the mode in which those rights are here to be enforced.

Therefore, where a policy of insurance against fire, was issued, by an office in this state, to *A*, the wife of *B*, both residing in *Lower Canada*, on her separate property there situated; after a loss, *C*, a creditor of *B*, sought, by process of foreign attachment in our courts, to recover the moneys due on the policy in satisfaction of his debt against *B*; on the trial of the *scire-facias* in such process, it was shown, that such moneys, by the laws of *Lower Canada*, belonged exclusively to the wife under an ante-nuptial contract, and would not be liable for her husband's debts, or in any manner available to him or his creditors; it was held, that *C* could not recover. [By three judges against two.]

It appearing in such case, that *B* was the agent of *A*, to manage the property insured; that the debt to *C* was contracted by him, in that capacity and on that account; that *C* received of *B*, for such debt, a note signed by him as agent, on which *C* had brought his suit against *B* personally, and obtained judgment thereon; it was held, that *C*, having elected to pursue, and having thus pursued, the agent, could not afterwards resort to the principal.

Nor could *C*, by process of foreign attachment, reach the separate property of *A*, on the ground, that in equity, it was chargeable with the payment of her debts.

The sole and separate property of the wife cannot be taken to satisfy a debt due from her husband, by a proceeding to which she is not a party

*Hartford,*
*June, 1842.*

Jones
*v.*
The Ætna
Insurance Com-
pany.

Tнıs was a *scire-facias* in a process of foreign attachment, setting forth a judgment obtained by the plaintiff against *Francis Baby,* an absent and absconding debtor, before the county court of *Hartford* county, on the second *Tuesday* of *November,* 1838, in an action of *assumpsit* on a promissory note.

The defendants pleaded, that at the time the copy of the original writ was left in service with them, they were not indebted to said *Francis Baby*; on which issue was joined.

The cause was tried at *Hartford, September* term, 1841, before *Storrs,* J.

On the trial, it was not denied, that if the defendants were the debtors of *Francis Baby,* such proceedings had been pursued, as would entitle the plaintiff to recover. In *November,* 1838, the defendants issued a policy of insurance against fire to *Marie C. P. Baby,* the wife of *Francis Baby,* to the amount of 5000 dollars, on certain mills and the engine and machinery therein, situated at *Sherrington* in *Lower Canada,* where *Baby* and his wife resided ; which mills, engine and machinery were destroyed by fire, on the 8th of *April,* 1839, while the policy was in force, whereby the defendants became liable, to its full amount, and were so liable, when the plaintiff's process of foreign attachment was served on them. The property insured was the property of said *Marie C. P. Baby.* By an ante-nuptial contract between *Baby* and wife, it was stipulated, that all her property should be and remain her separate property ; and it was proved, by the deposition of *Charles D. Day,* of *Montreal,* one of Her Majesty's counsel in the law, That according to the common law of the province of *Lower Canada,* now in force, parties proposing to contract marriage, may, by their marriage contract, stipulate that each of the contracting parties shall hold, enjoy and administer his or her property and effects, real and personal, to the perfect exclusion of all right and claim on the part of the other ; that under the terms and stipulations contained in the marriage contract between said *Francis* and *Marie C. P. Baby,* she has the possession, enjoyment and administration of her property, solely and to the perfect exclusion of all right and claim upon the part of her husband ; that neither she nor her property is, in any manner, liable to his creditors ; and that any insurance effected in her name and favour, could not be

made available to them for the satisfaction of any debts con-
tracted by him.

The plaintiff claimed, that he had obtained a judgment
against *Francis Baby*, which was founded upon a note signed
by him as " agent of the *Sherrington* mills ;" that he was in
fact an agent, duly authorized and empowered, to conduct
the business of said mills for his wife; and that in that char-
acter, he, in the regular course of the business of said mills,
made the note in question ; and so this was really the debt of
Mrs. *Baby.*

Upon these facts and claims, the court charged the jury,
that *Francis Baby* was not, under our statute of foreign at-
tachment, the creditor of the *Ætna Insurance Company*,
when the copy was left with them in service; and that the
plaintiff had no remedy at law, but his remedy, if any, was
in chancery ; and directed the jury to return a verdict for the
defendants ; which they accordingly did.

The plaintiff moved for a new trial for a mis-direction.

*Toucey* and *T. C. Perkins,* in support of the motion, con-
tended, 1. That the plaintiff's debt was due from the husband,
who was alone liable *at law* in all contracts made by him as
agent of the mills, while they were run for her benefit.  1
*Esp. Dig.* 127.  *Newl. Contr.* 21, 2.  *Marshall* v. *Rutton,*
8 *Term Rep.* 545.

2. That the debt of the defendants is at law due to the
husband, being on a contract made during coverture ; and he
may—and indeed must—sue for it in his own name.  1 *Chitt.*
*Plead.* 18.  1 *Sw. Dig.* 28.  *Fitch* v. *Ayer,* 2 *Conn. Rep.* 143.
145, 6.  *Griswold* v. *Penniman* & al., 2 *Conn. Rep.* 564.
*Cornwall* v. *Hoyt,* 7 *Conn. Rep.* 420. 426.  *Barlow* v. *Bish-
op,* 2 *East* 432.  It is no part of her separate estate, and
cannot be regarded in that light, upon any facts proved or
claimed in the case.  *Neale,* admr. v. *Reid* & al. 1 *B. &
Cres.* 657.

3. That if this debt be the wife's separate estate, and due
to the husband at law and to the wife in equity ; the plain-
tiff's debt is due from the husband at law and from the wife in
equity.  *Newl. Contr.* 23. 27, 8, 9.  2 *Sto. Eq.* 627, 8, 9,
*Gardner,* admr. v. *Gardner* & al. 7 *Paige* 112. 116, 17.
*The North American Coal Company* v. *Dyett* & al. 7 *Paige*

*Hartford,*
June, 1842.

Jones
*v.*
The Ætna
Insurance Com-
pany.

*Hartford,*
*June, 1842.*

*Jones*
*v.*
*The Ætna*
*Insurance Com-*
*pany.*

9.  S. C. in error, 20 *Wend.* 570.   Both law and equity, therefore, will alike apply this money in the defendants' hands to satisfy the plaintiff's debt.

4. That the remedy at law being adequate, there is, in our courts, no remedy in chancery.

*Hungerford* and *W. W. Ellsworth*, c⁊ntra, contended, 1. That the debt due from the defendants was the separate property of *Marie C. P.*, the wife of *Francis Baby*, by virtue of the marriage articles.   See Mr. *Day's* deposition and *The King of Spain* v. *Machado*, 4 *Russell* 225.

2. That the separate estate of the wife is not liable for the debts of the husband.   2 *Kent's Com.* 136. *Taggart* v. *Talcott*, 2 *Edwards*, 628.   *Quick* v. *Garrison*, 10 *Wend.* 335. *Sharp* v. *Wickliffie*, 3 *Little* 13.   *Jones* v. *Henry*, 3 *Little* 427.   See also Mr. *Day's* deposition.

3. That the record of the original suit and the present *scire-facias* show the debt sought to be recovered, to be the debt of *Francis Baby*, and not of his wife ; which record and *scire-facias* are conclusive upon the plaintiff in this case.

4. That admitting the debt for which this suit is brought to have been contracted for the benefit of Mrs. *Baby's* separate estate, the claim cannot be enforced against her, or her property, in this suit : For, in the first place, her contracts at law are void.   *Pow. Cont.* 59. 79. & *seq.* 103.   Secondly, they can be enforced only by the peculiar jurisdiction of a court of chancery ; and that too, by a proceeding to which the wife is a party.   *Pow. Cont.* 103. 2 *Kent's Com.* 137. *Quick* v. *Garrison*, 10 *Wend.* 335.   *Dyett* v. *The North American Coal Company*, 20 *Wend.* 570.   S. C. *in canc.* 7 *Paige* 9.   *Gardner* v. *Gardner*, 22 *Wend.* 526.   2 *Sto. Eq.* 627. *sect.* 1399. 1401.

5. That by our statute of foreign attachment, before a *scire-facias* can be sustained, judgment must be obtained against the original debtor, execution must be issued against that debtor, and demand must be made of his effects in the hands of the trustee.   Now, admitting that the policy of insurance belonged to Mrs. *Baby*, and that the present plaintiff's debt was due from her, the statute has not been complied with ; because, in the first place, no judgment has been recovered against her, nor execution issued, nor demand made of

the defendants of her effects in their hands ; and secondly, if she was the debtor of her husband, the statute does not authorize this process against the trustee of the original debtor's debtor—which is attempted in this case.

*Hartford,*
June, 1842.

Jones
*v.*
The Ætna
Insurance Company.

WILLIAMS, Ch. J. (a)   The facts admitted, or proved, in this case, seem to render it unnecessary to go over all the ground which has been traversed in this case.   All the transactions in question, except the insurance and subsequent proceedings, took place in a foreign country, in reference to the laws of that country, by citizens of that country, and, of course, are to be governed by the laws of that country.   This has not been denied.   We waive, therefore, the discussion of the question as to the doctrine of separate property in the wife, and how far the case of *Dibble* v. *Hutton*, or rather, some of the doctrines of that case, would now be regarded.   These parties, coming here from another country, have a right to have their contracts explained as they would be by the laws of that country where they were made.   The inquiry then, is, what are the rights of Mrs. *Baby*, under the contract she made before her marriage ?   How do the laws of *Canada* treat contracts of this kind, entered into by persons about to intermarry ?   It is a matter of fact, to be proved, as other facts are, by testimony ; and we have it in a word : " The moneys arising from this insurance, would, without doubt, belong altogether to Mrs. *Baby*, and would not be liable for her husband's debts, or in any manner available to him, or his creditors."   It comes, indeed, from a single witness ; but his testimony stands unimpeached, and uncontradicted.   It would seem, then, that unless there is something more, there can be no doubt as to this case.

But it is said, that as the party must resort here for the recovery of this debt against this company ; and as, when she

(a) At the opening of this case, the Chief Justice declined sitting therein, on the ground that he was a stockholder in the *Ætna Insurance Company.*   It was thereupon stated, that this company had no real interest in the event of the suit ; it being a matter of indifference with them to whom they paid the money which they admitted to be due on the policy ; and the counsel on both sides offered to waive the legal exception pursuant to the statute.   The Chief Justice said, that the rule which he had prescribed to himself, was, that where he had a real interest in the event of the suit, he would not act as a judge, though the parties were willing to waive the exception ; but where he had no such interest, if the parties chose to waive the exception, he was willing to sit.   This case coming within the latter predicament, he retained his seat.

*Hartford,*
*June, 1842.*

*Jones*
*v.*
*The Ætna*
*Insurance Com-*
*pany.*

comes here, she, being a married woman, can sue only in the name of her husband ; this will have an effect upon the claim of the plaintiff. No authority has been produced to show, that the suit must be brought here, in the husband's name.

It is said, however, that his wife's choses in action, by our law, vest in him ; that he alone can bring the action; and that no defence can be made to an action thus brought.   This is all true, if we are not to regard the laws of *Canada*.   But if we are, it may be asked, whether if this chose in action does not vest in the husband, it being a foreign contract, it can be taken as a matter of course, that the suit must be brought in the name of the husband.   It is true, that, as a general rule, the interpretation of contracts is to be governed by the law of the country where the contract was made ; yet the mode of suing, and the time within which the action is to be brought, must be governed by the law of the place where the action is commenced.   *De La Vega* v. *Vianna*, 1 *B. & Adol.* 284. *The British Linen Company* v. *Drummond*, 10 *B. & Cres.* 903.

But when the principle on which a suit is to be sustained, depends upon the question who is owner, or has the legal title to the property, it would seem as if the law which recognizes one person as owner, would ordinarily recognize the right of that person to sue as owner.   As in our state a married woman is not the independent owner of property, it follows, of course, that she cannot sustain a suit for property. In equity, however, where her rights as owner are recognized, she may sue by a *prochein ami.*   20 *Wend.* 573.   And at a time when notes were not negotiable in this state, it was holden, that notes given in other states were not only negotiable, but that the indorsee might maintain an action in his own name.   *Bowne* v. *Olcott*, 2 *Root*, 353.   *Goff* v. *Billinghurst*, 2 *Root*, 527.   And it would seem as if the *English* courts had recognized the same principle, upon facts the reverse of these. In *Trimbay* v. *Vignier*, 1 *Bing. N. C.* 151., the question arose upon a note indorsed in blank in *France*, whether the holder could bring suit in his own name, in *England*.   *Tin-dall*, Ch. J., says : " The question, therefore, is, whether the law of *France*, by which the indorsement in blank does not operate as a transfer of the note, is a rule which governs and regulates the interpretation of the contract, or only relates to the mode of instituting and conducting the suit ; for, in the

former case, it must be adopted by our courts; in the latter,
it may be altogether disregarded, and the suit commenced in the name of the present plaintiff. And we think the *French* law on the point above-mentioned, is the law by which the contract is governed, and not the law which regulates the mode of suing. If the indorsement has not operated as a transfer, that goes directly to the point, that there is no contract upon which the plaintiff can sue." The Chief Justice then goes on and considers the consequences, particularly its bearing on the law of set-off, and comes to the conclusion, that as the plaintiff could not sue in his own name in *France,* he cannot in *England.*

In this case, the insurance being made in *Connecticut,* other considerations, perhaps, would be interposed. We do not mean to decide that point; we do not think it necessary. If, as we think, it is clearly established, that she is the real owner, it cannot be admitted, that the rights of such owner can be essentially varied, by the manner in which she is obliged to pursue her remedy. If it were so, it would be a most powerful argument, in a doubtful question, against driving a party to a particular form of remedy, when the form would affect vested rights. If our law regards rights derived under the law of foreign governments, and means to protect them, it will not make that protection illusory. It will not say, we recognize your rights, but such are our forms that we cannot secure you in the enjoyment of them. We adopt the law of the domicil, which pronounces the wife owner of this property; and if we are compelled to say, that, by our course of proceedings, she must pursue her remedy in the name of the husband, we know no rule which requires us to shut our eyes upon the fact, that, on this subject, he is the mere nominal party, having no interest whatever. And when we adopt the law of *Canada,* under which this property cannot be made available for the payment of the debts of the husband, we do not make it subject to any exception. In whatever name, then, the suit must be brought, it is brought for the owner; and the wife being the owner, and the husband, at most, but a trustee, it cannot be taken for his debt.

Again, it is said, this note is not his debt, but it is, in fact, her debt, being given by him for her benefit, in his capacity as agent; and therefore, that her separate property ought to

*Hartford,*
*June, 1842.*

*Jones*
*v.*
*The Ætna*
*Insurance Com-*
*pany.*

be responsible for it.   The plaintiff claimed to have proved, and, for this purpose, it must be supposed he has proved, that *Francis Baby* was the agent to manage the mills ; and that the debt was contracted by him, in that capacity, and on that account.   The plaintiff also received a note for his debt of *Francis Baby,* signed by him as agent, and has brought his suit against him personally, and obtained judgment thereón ; which judgment he is now attempting to enforce.   And he would have this court, sitting as a court of law, look back of the judgment so obtained, to discover the equity of the plaintiff there existing.   It is certainly a matter of great doubt, whether, if the court could do this, the plaintiff has any such equity as the court can recognize.   *Baby,* he says, was agent for these mills ; and knowing this, he takes his note as agent ; and not only takes his note, but, treating it as the personal contract of *Francis Baby,* he sues him upon it, and charges him with the debt.   On this subject, the rule of law is, that if a person deals with another, not knowing of his agency, when the principal is disclosed, he may pursue the principal ; but if he elects to give the credit to the agent, he cannot pursue the principal.   *Paterson* & al. v. *Gandassequi,* 15 *East,* 62.   *Addison* v. *Gandassequi,* 4 *Taun.* 574.   *Beebee* v. *Robert,* 12 *Wend.* 413. 417.   After the course the plaintiff has chosen to pursue, we are not prepared to say, that he can now elect to pursue the principal.

The case of *Barber* v. *The Hartford Bank,* 9 *Conn. Rep.* 407. has been cited in support of the plaintiff's claim.   There, the *Hartford Bank* obtained judgment against *Walter E. Heyer* and *Jacob Burdett,* in a process of foreign attachment, wherein *Barber* was made a garnishee.   Upon a *scire-facias* founded on this process, the legal representatives of *Garrit Heyer,* formerly a partner of *Heyer* and *Burdett,* came in to defend, claiming that *Barber* was not indebted to *Heyer* and *Burdett,* because they, upon a fair account stated between the late firm of *Heyer & Burdett,* would be debtors to *Garrit Heyer's* estate, and so nothing remained due from *Barber* to them, it being, in fact, all due to *Garrit Heyer's* estate.   The court recognized the principle, that these partners could not be said to have any interest in the concern, except in the surplus after debts were paid, thus recognizing the equitable rights of the heirs of *Garrit Heyer.*

But we do not see, how this shows, that the separate prop- *Hartford,*
erty of Mrs. *Baby,* is liable for her husband's debts. It is *June, 1842.*
true, that the law will protect the equitable interest of the *Jones*
garnishee, and even of a third person, against the rigour of *v.*
this law. But it by no means follows, that it will subject a *The Ætna Insurance Company.*
mere equitable interest to this process. We do not see how
that case can materially affect this. By the construction
given to this law, it is certainly intended to protect the equita-
ble, as well as the legal, rights, not only of the garnishee, but
of others; and that was done in that case. But it does not
affect the question, how far a creditor might attach an equita-
ble interest which might be supposed to exist in his debtor, in
the fund attached.

Again, the plaintiff seeks to appropriate this debt, the sole
and separate property of Mrs. *Baby,* for the debt of her hus-
band, when she is not a party to these proceedings. Were
she before the court, she might be able to show, that her hus-
band had no equitable interest in her estate. If she is to be
bound by this judgment, it would be gross injustice to her,
when she is not a party. If she is not to be bound, it would
be gross injustice to the defendants; as they must be exposed
to the dangers of another suit, and of a different result.

Much has been said in relation to the practice of the courts
of equity in charging the separate estate of a married woman
with the debts contracted by her; and assuming that this was
in fact the debt of Mrs. *Baby,* it is to be a charge upon this
separate estate. It has, indeed, formerly been holden, that a
married woman, as to her separate property, was to be taken
as a feme sole; and so, her general engagements would bind
her separate property. *Lillia* v. *Airey,* 1 *Ves. jr.* 278. But
the rule is now somewhat changed, and she must do some act
indicating an intention to charge her separate estate with a
payment of the debt. 2 *Sto. Eq.* 626. *sect.* 1398. The fact,
however, that the debt was contracted during the coverture,
is *prima facie* evidence of such an intention. 2 *Sto. Eq.* 628.
*sect.* 1400.

We have seen no case where it has been holden, that where
her creditor takes a note from her agent, and holds him per-
sonally responsible, any such implication would arise.

Without examining this question further, it is enough to say,
that the doctrines of courts of equity as to the nature and ex-

*Hartford,*
*June, 1842.*

Jones
*v.*
The Ætna
Insurance Com-
pany.

tent of the liability of the separate estate of a married woman for her debts, are too artificial in their texture, and too complicated in their details, for the simplicity of the practice in courts of law. We think, therefore, they do not require further examination in this case. And, upon the whole, a majority of the court are entirely satisfied, that there ought not to be a new trial.

CHURCH and STORRS, Js., concurred in this opinion.

WAITE, J. The court, in this case, instructed the jury, that, upon the facts proved, and the claims made, by the plaintiff, he had no remedy at law. It seems now to be conceded, that a suit in chancery would avail him as little.

Is he, therefore, remediless? If the case is to be governed by the laws of this state, it is very clear, that he is entitled to recover. Although the policy was given to the wife, yet the money due upon it belongs to the husband, and is liable for his debts. *Fitch* v. *Ayer*, 2 *Conn. Rep.* 43. *Griswold* v. *Penniman*, 2 *Conn. Rep.* 264. *Cornwall* v. *Hoyt*, 7 *Conn. Rep.* 426. *Morgan* v. *The Thames Bank*, 14 *Conn. Rep.* 102.

It is, however, insisted, that by the laws of *Lower Canada,* where *Francis Baby* and his wife were domiciled, the amount due upon the policy belonged to the wife, as her sole and separate estate, and was not liable for the debts of her husband. Those laws being foreign, cannot be noticed by this court, further than they are found and presented by the motion. *Dyer* v. *Smith*, 12 *Conn. Rep.* 385. *Hempsted* v. *Reed*, 6 *Conn. Rep.* 486. *Bracket* v. *Norton*, 4 *Conn. Rep.* 518.

Now, it is not stated, that an action upon the policy can be maintained in her name. It does, indeed, appear, that, by the marriage contract, the money due upon the policy belongs to her, and cannot be made available for the payment of her husband's debts. But whether the remedy is at law, or only in chancery, does not appear.

If her title is only an *equitable* one, it seems to me, it cannot defeat the claim set up by the plaintiff. He insists, that the judgment against the husband was upon a debt contracted by him *as her agent*, in carrying on her business at the mills insured, for her sole and separate benefit; and although *at law* it was due from him, yet *in equity* it was the debt of the wife,

and ought to be satisfied out of her property.    And I take it to be now well settled, that, in this proceeding, the court will enquire into the equitable as well as legal rights of the parties. *Bishop* v. *Holcomb,* 10 *Conn. Rep.* 444.

*Hartford,*
June, 1842.

Jones
*v.*
The Ætna
Insurance Company.

In this view of the case, it seems to me, that both justice and equity require, that this debt due at law from the husband, but in equity from the wife, should be satisfied out of funds belonging at law to the husband, and in equity to the wife; and I can see nothing that will prevent a decision in this case, in conformity with their requirements.

Suppose real estate is conveyed to trustees for the sole and separate use of a married woman, and they, at her request, and for her use, erect a dwelling-house thereon ; and, in so doing, contract debts and give their notes as trustees.    They, alone, can be sued upon them.    Suppose, for their security, they cause an insurance to be made upon that house, in their names as trustees, and the house is afterwards destroyed by fire.    Now, it is evident, that the money due upon the policy ought not to be appropriated to the payment of their private debts.    But is there any injustice in applying it in payment of the debts contracted by them for her benefit ?    And suppose, in such case, that the trustees are so situated that a process of foreign attachment can be brought against them upon their notes ; can there be a doubt but that the money due upon the policy can be attached and holden ?    I can see no difference, in principle, between the case supposed and the one under consideration.

If it had been expressly found, that, by the laws of *Lower Canada,* an action upon the policy could only be sustained in the name of the wife, there might be a technical difficulty, although the equity of the case would remain the same.    But that is not found ; and we are not authorized to say, that those laws differ from ours in this respect, unless so found, " with at least certainty to a common intent."    *Hempstead* v. *Reed,* 6 *Conn. Rep.* 486.

From the best examination I have been able to give this case, I cannot satisfy myself, that the instruction given by the court below was right.    If the plaintiff's claim be correct, and the charge was made upon that claim, then his debt was in equity due from the wife ; and there can be no injustice in subjecting her property for the payment.    And although the

*Hartford,*
*June, 1842.*

Jones
*v.*
The Ætna
Insurance Com-
pany.

judgment was at law against the husband; yet, in my opinion, it is as proper for the court to enquire, who in equity is the debtor, as it is to enquire who in equity is entitled to the debt attached.

It has appeared to me that a new trial ought to be granted.

HINMAN, J., was of the same opinion.

New trial not to be granted.