Granger, C. J.
Maple’s petition in the common pleas averred that one John D. Gennett, as agent for the Cincinnati, Hamilton and Dayton Railroad Company, at times between January 14, 1870 and April 5, 1876, collected from him, on freight bills of the company, 1307.80 more than was due thereon; that the company, by said agent, “fraudulently overcharged above the regular and special rates for said freight, all without the knowledge and consent of the said plaintiff, by adding a percentage of pounds in weight to the bills presented to the plaintiff, in excess of the true weights upon the books of said company, all of which was fraudulently done.” And “that he never had any knowledge of ” said fraud “until the month of April, 1876.” The action was begun September 30th, 1878.
The second, third and fifth defenses in the answer as amended read as follows:
2. Said defendant for further defense says that the said causes of action in the said plaintiff’s petition set forth did *315 not accrue to the said plaintiff against the defendant within four years next before the commencement of this action. Wherefore the same is barred by the statute of limitations in that behalf, in this that its frauds complained of, if committed by said agent, were committed by him as such agent at a time then four years prior to the commencement of this action in this court.
3. Said defendant further answering says that said plaintiff heretofore, to-wit: at the September term, 1876, of the court of common pleas of Putnam county, Ohio, recovered a judgment against the said J. I). Gennett upon proceedings therein before had in said court in a certain action wherein said. Simon Maple was plaintiff and J. D. Gennett was defendant, and which said judgment was for the sum of $307.80 principal and dollars interest and costs of suit, and said defendant avens that said judgment so rendered was for the same subject matter and cause ox action as the first cause of action in the plaintiff’s petition herein set forth. That said judgment remains in full force and effect, wherefore said plaintiff has no right to have or maintain his suit1 against the said defendant upon said first cause of action.
5. That said defendant had no knowledge of any charges made by said J. D. Gennett in excess of the regular rates of freight, and collected by him, as charged in 'the petition herein, and the same was without the authority or consent of the said defendant, nor did the said defendant ever receive any portion of the said excessive charges, or in any way receive any benefit therefrom, or ratify the same, but on the contrary was entirely ignorant of any acts of the said Gennett in regard to such over-charges in excess of the regular rates for freight, and never in any way ratified or accepted the same or any part thereof. Wherefore the said plaintiff should not have or maintain his said action against said defendant.
To each of said defenses the plaintiff demurred. The common pleas overruled all the demurrers and gave judgment for the defendant. The plaintiff excepted, and asked *316 the district court to reverse the judgment. As that court affirmed the common pleas, he now asks a reversal of both courts.
The petition contained other causes of action, and the answer other defenses, but we notice only the fact that the fourth defense raises the same question as the third, although pleaded to other causes of action. A demurrer to it was also overruled.
The second defense says that the cause of action .did not accrue within four years because the fraud was not committed within four years. This mode of putting it admits the truth of the averment in the petition that the fraud was not discovered until April, 1876. As wp think the statute did not begin to run against Maple until he had discovered the fraud, the plea was not broad enough to cover the case stated by the petition, and the demurrer to it should'have been sustained.
The third defense presents an interesting question. In presenting and collecting the freight bills Gennett acted “within the scope of his authority.” The company held him out to its customers as its representative in that matter. - So long as the bills he presented did not by the weights or prices noted therein furnish fair reason to question their truth, a customer of the company had full right to rely upon them as being the demands of the company upon him. On these pleadings 'we must presume that the bills gave no indication of the fraud.
This defense admits that the fraud was the act of the company by its agent. If. they conspired together to commit the fraud they were joint tort feasors; could be sued jointly or severally. Iii such a case a judgment, without satisfaction, against one, could not be pleaHed in bar by the other. Is the rule different because the company was ignorant of the fraud, and is liable only because Gennett was acting within the scope of his authority? Was Maple bound to elect between agent and principal, and having carried his election to judgment against Gennett did he thereby release the company? No case precisely in point *317 has been cited and we have found none. We are referred by counsel for the company to Priestly v. Fernie, 3 Hurlstone & Coltman Ex., 997; Patterson v. Gandesquin, 15 East, 62; Jones v. Ætna Ins. Co., 14 Conn., 501; Meeker v. Claghorn, 44 N. Y., 359; Seeley et al. v. Ryan Co., 2 Cin. Sup. Ct. Rep., 158, and a case in 1 Disney. The case in Disney gives no aid here. The one in Cin. Rep. decides that the principal and agent were not jointly liaise in that suit, and required the plaintiff to elect which one he would pursue in that action, so that the other might be stricken out. The _ other cases cited were suits upon contracts so made by the agent that the contractee might elect whether the agent, or the principal, should be considered the party with whom he had a contract; and the courts held, that, having carried the election as far as a judgment, the creditor had fixed the contract, and the parties thereto, permanently. Bramwell, J., in the ease in 3 H. & C., 997, places his decision upon the ground just stated and upon the additional consideration that the judgment against the agent altered the situation of the principal. But Gennett has no right to sue the company because of Maple’s judgment against him. He can base no action upon the result of his own wilful fraud.
We are also cited to Wharton on Agency and Agents, sec. 473. The author cites Priestly v. Fernie, above referred to, for the rule he states, but adds “there is much reason for the position that the mere taking judgment against the agent under such circumstances ” (as in the case cited) “ should not, when the judgment is unsatisfied extinguish the debt.” The case before us presents stronger reasons than the one referred to by Wharton for holding that the liability of the principal continues. Unless Maple’s recovery against Gennett affected the rights of the railway company, we can see no reason for holding that recovery a bar in its favor. So long as Gennett wholly fails to pay that judgment; so long as Maple makes no collection thereon, Gennett must remain liable to make good to the company the damage occasioned by his misconduct as its *318 agent. Nothing but satisfaction by him, or by his property ; or the statute of limitations, can release him without the consent of his principal. We hold that-the demurrer to this defense should have been sustained.
The text books — Story on Agency, sec. 452; Addison on Torts, vol. 2, sec. 1197, — agree that when the agent acts “ within the scope ” of his agency, the facts that the principal was ignorant of the fraud; did not receive any profit therefrom; and never ratified it, do not relieve him from liability for the fraud. The fifth defense was therefore insufficient.
Judgments below reversed; demurrers to 2d, 3d, 4th, and 5th defenses sustained and cause remanded.