STEPHEN L. USHER *vs.* WILSON WADDINGHAM.

New Haven & Fairfield Cos., Oct. T., 1892. ANDREWS, C. J., CARPENTER, TORRANCE, F..B. HALL and J. M. HALL, JS.

The defendant and one *K*, for the purpose of speculation, agreed to purchase lands on the shore of Long Island Sound for their joint benefit, the defendant to furnish the money needed and *K* to attend to the business, and the profits to be divided between them. In pursuance of the agreement certain lands were bought by *K* of the plaintiff, who executed a contract for their conveyance to him on his making certain payments and giving certain notes and a mortgage back. The plaintiff knew at the time that the defendant was associated with *K* in the speculation, but did not know the particulars. He however dealt with *K* on his own personal credit. Held that the defendant did not become liable upon the notes given by *K*.

But if the plaintiff had a valid claim against the defendant for the purchase price, yet he afterwards, with knowledge of all the facts, made a new arrangement with *K* by which he conveyed the land to him and

Usher *v.* Waddingham.

took his notes and a mortgage back in full payment of the purchase price and relying exclusively on his personal liability and on the notes and mortgage given. Held that the defendant was thereby discharged from his liability, if any existed.

Each of several partners is the agent of the others, and binds them by his acts on the principle of agency.

If a party deals with an agent knowing him to be such, and voluntarily gives exclusive credit to the agent, the principal does not become liable.

Whenever the note of one partner is taken for a partnership debt, with the agreement that it is taken in payment, it extinguishes the partnership debt.

A party cannot show his own ignorance of the law for the purpose of avoiding the application of that law to known facts.

[Argued October 25th—decided December 10th, 1892.]

ACTION to recover the amount of certain notes, upon which it was claimed that the defendant was liable as a partner with the maker; brought to the Superior Court in New Haven County, and tried to the court before *Thayer, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiff. The case is fully stated in the opinion.

*S. E. Baldwin* and *T. H. Russell,* for the appellant.

1. We are entitled to judgment on the finding of facts. It is found that when the contract of October 15th, 1881, was made, Usher knew that the defendant was in some way connected with Kimberly in the transaction, but did not know of the agreement between them, and that he made this contract with Kimberly relying exclusively upon his personal liability and upon the notes to be given and secured according to the contract. This agreement fixed the rights of the parties, and as the $1,000 paid down came in fact from Waddingham he would have had an equitable interest in the land even had he not been a partner. The fact that Usher was not then relying at all on him is unimportant, because the finding shows that he was not then in possession of the facts as to his part in the transaction. All that was afterwards done was in execution of this contract. Its terms were modified only to this extent—that instead of $10,000 in cash, which was to be paid, Usher received $5,000 in cash and a $5,000 note secured by mortgage. This

change did not make a new contract, but simply modified the old one. The parties remained as before. The $1,000 paid in with Waddingham's money remained in Usher's hands as coming from Waddingham, for he now knew where Kimberly got it. The transaction of March 1st, 1882, was therefore simply in execution of the previous contract, modified in a particular not now material. It is found that on the last day of February, 1882, after Usher had full knowledge of the relations of Waddingham and Kimberly, he agreed with Kimberly to make the modifications above referred to, and accept the cash and Kimberly's notes and mortgage in full payment, but there is no finding that Usher in doing this agreed to relinquish his hold of Waddingham as a secret partner. His agreement to accept the notes is fully consistent with his claim on Waddingham as one of the makers under the firm name of E. L. Kimberly. This agreement of February, 1882, was a mutual one. Kimberly agrees to give an additional mortgage on partnership property, and the actual exchange of papers on March 1st, 1882, was simply in execution of this agreement. There was no new contract, and no new modification of the old one; therefore the finding that on March 1st Usher relied entirely on Kimberly's credit and the security of the mortgage back is immaterial. He did not promise to rely upon it, and, if he had, there would have been no consideration to support the promise. Nor is it found that either Kimberly or Waddingham ever was informed that Usher was relying simply on Kimberly's credit and the mortgage. It is certain that Waddingham was liable to Usher for the fulfillment of the original contract. The finding makes Waddingham and Kimberly partners in that contract. The debt in suit is for the purchase price of the land conveyed to the partnership under the contract as modified by decreasing the cash payment and increasing the mortgage security.

2. How has Waddingham become released from his partnership obligation to pay for this partnership property? Not by any contract with him or any notice to him, nor, so far as appears, by any notice to Kimberly. If Usher has

lost his right against Waddingham it must be by a waiver. But a waiver " is an intentional relinquishment of a known right." A right to be relinquished must be relinquished by some intentional act signified to the party to be benefited by it, or else by novation. Now no act is found, no notice and no novation. There can be no election to hold one person liable unless the party who elects knows that some one else can be held liable. Election involves a choice between two courses, and there must be knowledge that such two courses are open. The ground which the court took in ruling out the question addressed to Kimberly as to whether he knew that Waddingham was a partner, was, that knowing the facts, he was bound to know the law and his rights. The court does not find that he knew these rights, and does not find that he relinquished or intended to relinquish any claim which he might have against Waddingham. Where property is purchased for the use of a partnership there is a liability of the partnership for it, and it makes no difference that the credit is given to or a written obligation taken from one of the parties, unless it is done upon full knowledge of the legal rights of the creditor and with the intent to release or waive the right to hold the partnership, and this release or waiver is wholly a question of fact. The creditor may insist on the individual note of one partner in preference to a firm note, and still, if the note were given on partnership account, the partnership would be held on it. *In re Thomas*, 8 Bissell, 139. In *Brooks* v. *Washington*, 8 Gratt., 248, the court uses this language : " When one deals with a partner in matters relating to the partnership business, it ought to be inferred that he deals on the credit of the partnership, unless the circumstances prove that though apprised of the partnership he meant to give individual credit. * * * To discharge the firm it ought to appear clearly that he gave credit to the individual alone, and intended to absolve the other partner." The fact that credit is given to one partner does not bar an action against the other, even when the partnership was known. *Griffith* v. *Buffum*, 22 Verm., 181. Much less will it bar

the action when the partnership is not known to exist. In the case of *Poole* v. *Lewis*, 75 N. Car., 422, the court says: —"If a vendor sells goods to a firm and chooses to take the obligation of the purchasing partner, and waives his right to hold the firm liable, he may do so, but in such case it is necessary for the firm to prove that the vendor knew that the party was a member of the firm and elected to give credit to the purchasing party alone; in other words, to take the less instead of the greater security to which he was entitled." There is nothing in the record which, rightly understood, is a finding that Usher knew that he had a right to hold Waddingham liable, or that he ever intended to release or waive any such right. On the contrary the court treats the question of his knowledge of his rights, or of his actual intention, as one utterly unimportant. Now if it is true that the Waddingham and Kimberly business was done in the name of Kimberly and the notes given in his name on behalf of Kimberly and Waddingham, these notes were the notes of the partnership, and "Kimberly" was the name of the partnership as fully as "Waddingham & Kimberly" would have been. It then makes no difference what the state of Usher's mind was or to whom he gave credit. He was entitled to hold the partners in the firm of "Kimberly" for any transaction in the line of their business and for their benefit. SHAW, C. J., in the case of *Baring* v. *Crafts*, 9 Met., 392, says:—" When parties agree to transact business jointly or under an agreement to share in the profits, the name or firm which they use is arbitrary and conventional. * * * They may use the name of both or of one of them alone, or any distinct designation by which all will be included and bound as if their names were used. * * * And when the joint dealing is confined to one transaction and conducted by one of the parties by agreement or mutual understanding, a contract entered into in such name and with reference to such interest and dealing is binding as well on the party not named as on the party whose name is used." Parsons on Partnership, 129, note to 3d edition;

*Bank of Rochester* v. *Monteath*, 1 Denio, 402; *Oliphant* v. *Mathews*, 16 Barb., 608; *Mifflin* v. *Smith*, 17 Serg. & R., 165.

3. As there can be no waiver or election without knowledge of the responsibility of the party in whose favor the waiver or election is claimed, (*Tyler* v. *Waddingham*, 58 Conn., 375, 388,) we had the right to ask Usher the question excluded by the court :—"Did you at any time in 1882 or 1883 know that Waddingham was a partner with Kimberly?" We denied that the plaintiff knew all the facts constituting the partnership, and also that he knew that there was a partnership. If he had been allowed to answer the question, and had answered it in the negative, the defendant would have had the right to show, on cross-examination or otherwise, that Usher knew the material facts. Had this been shown, we should still have claimed that Usher could not intentionally relinquish a right derived from those facts, which he never knew could be or was derived from them. To make out an election the party electing "must be fully cognizant of the nature and extent of his rights, both in fact and law." *Edwards* v. *Morgan*, 13 Price, 782; *Brice* v. *Brice*, 2 Molloy, 22. But that claim was not then to be passed upon. He might answer the question in the negative, because he did not know the facts. Had the question been, what it was not—Did you know in 1882 that Waddingham was legally liable as partner—we should claim that it would have been admissible. An election to give exclusive credit to Kimberly and thus discharge a responsible dormant partner, could only be found upon proof of an intent to discharge Waddingham from a legal liability known to exist. If Usher knew the facts but mistook the law, he is not estopped from resorting to Waddingham when he first learns that he is legally liable to him. It would be a mere case of pardonable mistake of law. *Blakeman* v. *Blakeman*, 30 Conn., 320; *Butterfield* v. *McNamara*, 54 id., 94, 98; *Cake* v. *Peet*, 49 id., 501, 505; *Mansfield* v. *Lynch*, 59 id., 320, 326; *Haussman* v. *Burnham*, 59 id., 117, 134. Had he even sued Kimberly in his lifetime on the notes without joining Waddingham, because ignorant that the

law was such as to make Waddingham liable, he would have had the right to withdraw such suit, on discovering what the law was, and resort to Waddingham as a partner. *Colwell* v. *Weybosset Nat. Bank*, 16 R. Isl., 288; *Filley* v. *Phelps*, 18 Conn., 294, 305. Ought we to be held to have known that a partnership liability existed at law, when Waddingham's answer in this suit denies it, and says that he never believed or suspected that a partnership could be claimed? But it did not lie in the power of Usher to sever his relations with Waddingham. He became accountable to Waddingham and Kimberly for the $1,000 paid in, if he failed to fulfill his part of the agreement. By the second payment of $5,000, as Usher knew, with partnership funds, Waddingham acquired a further interest in Waverly Grove, and, under the mortgages of the Clark property, other rights of action in his favor sprang up for any breach of obligation on his part. Only by Waddingham's consent can the relations between him and Usher be terminated. *Janney* v. *Springer*, 78 Iowa, 617. Their relations must have been mutual. If Waddingham can call on Usher to account, (which is claimed by him in this suit,) Usher must be able to call on him for the balance of the notes. Waddingham never consented to being excluded from the transaction in which he had embarked $6,000 and was a partner. If I deal with another partner, without knowledge that he has a dormant partner, I can elect to give credit to him alone. But if I know that he has a dormant partner, and that he is acting for the partnership, I have no such election.

*H. Stoddard* and *C. K. Bush*, for the appellee.

ANDREWS, C. J. This action is brought to recover the amount of two notes signed by Edward L. Kimberly of the following description :—

" ($24,000.)     New Haven, Connecticut, March 1st, 1882.

" On or before five years after date, for value received, I promise to pay to the order of Stephen L. Usher twenty-four thousand dollars, with interest at the rate of six per cent

per annum, payable semi-annually, together with all taxes assessed upon said sum against said Usher or the holder of this note.

"(Signed) EDWARD L. KIMBERLY."

"($5,000,00.) New Haven, Connecticut, March 1st, 1882.

"One year after date, for value received, I promise to pay to the order of Stephen L. Usher five thousand dollars, with interest at the rate of six per cent per annum, payable semi-annually, together with all taxes assessed upon said sum against said Usher or the holder of this note.

"(Signed) EDWARD L. KIMBERLY."

These notes grew out of an agreement with the plaintiff for the purchase from him of certain lands in the town of Orange known as "The Waverly Grove," in writing, and spoken of throughout the case as Exhibit A, namely:—
"This agreement made and concluded this 15th day of October A. D. 1881 at New Haven, Connecticut, between Stephen L. Usher of Orange, and Edward L. Kimberly of Orange, witnesseth that the said Usher, in consideration of one thousand dollars to him paid by the said Kimberly (the receipt whereof is hereby acknowledged), and in further consideration of the promise of the said Kimberly herein-after contained, doth hereby promise and agree to and with the said Kimberly, that immediately upon the faithful per-formance of the said Kimberly's agreement hereinafter made, he the said Usher will, on or before the first day of March, A. D. 1882, make and deliver to the said Kimberly or his appointee or appointees a good and sufficient warran-ty deed free of all incumbrances, and containing the usual covenants in such deeds contained, of all that tract of land, with all the buildings thereon, situate, lying and being in the town of Orange, containing fourteen acres more or less, and bounded north by land of David Platt; west by land of the heirs of Allen Northrop; south by land of Rufus Wakelee; and east by highway, nine hundred and ninety feet more or less, being the whole of said Usher's property at Waverly Grove on the west side of the highway; or in

case the said Kimberly should prefer and so notify said Usher in writing, said Usher will in the above manner and at the above time convey to said Kimberly a portion of said property with the buildings thereon, seven hundred and twenty feet front on the highway, beginning at the south line, with the same proportion of rear as of front; possession of the property, except the homestead, to be given in either case on or before the first day of May, 1882, and the possession of the homestead on or before the first day of October, 1882.

" In consideration whereof the said Kimberly doth hereby promise and agree to and with the said Usher, that he will, on or before the said first day of March, 1882, pay to the said Usher the further sum of thirty-four thousand dollars, in addition to the payment already made, being the balance of the purchase money hereby agreed upon for the whole of the said tract of land, or in case said Kimberly should prefer as aforesaid to take the portion thereof above described, he will pay to said Usher at said time the sum of twenty-four thousand dollars, being the balance of the purchase money hereby agreed upon for said portion, in manner and form in each case as follows, namely:—ten thousand dollars in cash on the delivery of the deed or deeds, and the balance in a note or notes of said Kimberly or his appointee or appointees respectively, payable in five years from this date, with interest semi-annually at six per cent per annum, and all taxes thereon, secured by a first mortgage or mortgages upon the property conveyed. In case said Kimberly or his appointee or appointees should wish any portion of the mortgaged property released upon paying a portion of the mortgage debt or debts, and said Usher or his assigns should be unwilling to do so, the other party or parties shall be at liberty to pay the whole of the mortgage debt.

" And it is further agreed that if the said Kimberly shall fail to make the several payments, or any one of them, as hereinbefore stated, he shall forfeit all claims to the premises described herein and all moneys paid in pursuance of this agreement.

Usher v. Waddingham.

" In testimony whereof we have hereunto set our hands and seals, and to a duplicate instrument of the same tenor and date, on the day and year above mentioned.

"STEPHEN L. USHER.        (Seal.)

"EDWARD L. KIMBERLY.     (Seal.)"

On the last day of February, 1882, the plaintiff agreed with Kimberly to so modify this contract that the cash payment should be reduced from $10,000 to $5,000, and to accept the two notes above set forth, secured by a first mortgage of the property to be conveyed, in full payment of the purchase price thereof. On the next day this was done; the plaintiff executed and delivered to Kimberly a warranty deed of the Waverly Grove property; and Kimberly paid to the plaintiff $5,000 in cash, and executed and delivered to him the said two notes and a mortgage securing the same as agreed.

The pleadings in the case are prolix and somewhat involved. The complaint contains numerous paragraphs the pertinence of which, as the case comes to this court, does not clearly appear. There are four defenses; then a counterclaim in three counts is pleaded, and a set-off also in three counts. There are motions to expunge, and to make more specific, with the rulings of the court thereon, and there are amendments, demurrers and replies. The real case, however, that was tried and decided is a much less complicated one.

The complaint alleges,—among many other things that need not here be recited,—that about July 1st, 1881, the defendant and one Edward L. Kimberly, since deceased, entered into a parol agreement between themselves to the effect that Kimberly was to negotiate for and purchase certain tracts of land in the towns of Orange and Milford, including lands of the plaintiff, taking title in his own name, and giving any notes or mortgages to secure the purchase money therefor in his own name but on account of both; that Kimberly was to do all the work and perform all the services necessary in connection with the business, and that the defendant was to furnish all the money needed to effect the purchase of the property and to carry out the various

enterprises necessary to develop the same, and that the profits arising should be divided between them; that pursuant to such agreement, and in behalf of himself and the defendant, Kimberly paid to the plaintiff $1,000 from funds furnished by the defendant, and thereupon the contract dated October 15th, 1881, was executed and delivered; that on the 1st day of March, 1882, in pursuance of said contract, the plaintiff made and delivered a warranty deed of the land therein described to said Kimberly and that Kimberly on said day paid to the plaintiff the sum of $5,000 from funds furnished by the defendant, and also executed and delivered to the plaintiff the two notes upon which this suit is brought. It is further alleged that the plaintiff, when he accepted said notes, did not know of the nature of the agreement between Kimberly and the defendant, and did not intend to release any claim against the defendant.

The first defense mentioned each of the paragraphs of the complaint, denying generally all the things alleged to have been done by the defendant and admitting the things alleged to have been done by Kimberly. The substance of this defense was that it denied the parol agreement alleged to have been entered into between Kimberly and the defendant. In other words it denied that Kimberly and the defendant were partners. The second defense alleges that—

"1. The plaintiff elected to give and did give sole and exclusive credit to said Kimberly in the transactions set up in the complaint.

"2. The plaintiff accepted in payment of the property described in Exhibit *A*, the notes of said Kimberly secured by a first mortgage from said Kimberly to the plaintiff upon said property and other property of greater value than the amount of said notes." This second defense is denied by the plaintiff in his reply.

At the trial the plaintiff claimed, and asked the court to rule, that the defendant and Kimberly were partners, and that the defendant was liable upon the notes.

The parts of the finding especially applicable to these claims of the plaintiff are these :—"At some time in the

spring or summer of 1881, the defendant and Edward L. Kimberly, for the purpose of speculation and profit, entered into an agreement to purchase lands in the towns of Orange and Milford, lying on or near the shore of Long Island Sound, and turn them over to a corporation to be formed. By the agreement the defendant was to furnish all the money for the enterprise and Kimberly was to perform all the services necessary and required in the negotiation for and purchase of the land and the securing of the title thereto, and the profits of the transaction were to be divided between them. The land of the plaintiff described in Exhibit *A* was purchased by Kimberly in pursuance of said agreement between the defendant and Kimberly. The plaintiff on the 15th day of October, 1881, executed and delivered to Kimberly the contract Exhibit *A*, for the consideration of $1,000, paid by Kimberly to the plaintiff from money furnished by the defendant to Kimberly. The plaintiff at the time this contract was executed knew that the defendant was in some way connected with Kimberly in the transaction, but he did not know the exact nature of the agreement and contract between them. He knew, however, that the plan was to acquire a large tract of West Shore property adjoining and including the Waverly Grove property, for the purpose of speculation. He at once, after the execution of the contract with Kimberly, secured the refusal of thirty-two acres of land adjacent to the Waverly Grove tract, which he knew was likely to be required for the speculation. To enable himself to get full information as to the relations and arrangement between Kimberly and the defendant, he transferred to Kimberly, upon a nominal payment, and trusted him for the balance, a half interest in this thirty-two acre tract, and also aided Kimberly in securing for himself and the defendant other property in the vicinity which was required for the speculation scheme. By these means he became intimate with Kimberly, talked with him frequently touching the scheme, and before the date fixed in his contract for the transfer of the property to Kimberly had learned from him the terms of his agreement with the defendant.

*The plaintiff made the contract with Kimberly, relying exclu-*
*sively upon his personal liability and upon the notes to be given*
*and secured according to the contract.*

" On the last day of February, 1882, and when he had full
knowledge of the relations subsisting between the defend-
ant and Kimberly, the plaintiff agreed with Kimberly to so
modify his contract with him that the cash payment should
be reduced from $10,000 to $5,000, and to accept the two
notes of Kimberly described in the complaint, secured by a
first mortgage upon the property in question, *in full payment.*
*of the purchase price thereof.* On the next day this was
done, and the plaintiff executed and delivered to Kim-
berly a warranty deed of the Waverly Grove property, in-
cluding the homestead, and Kimberly paid him $5,000 in
cash, and executed and delivered to him the notes described
in the complaint and the mortgage securing the same as
agreed. The plaintiff gave said deed and accepted said
notes and mortgage, *relying entirely on the credit of Kim-*
*berly and the security of said mortgage.*"

The court ruled that the defendant and Kimberly were
partners in the purchase of land as claimed, but ruled that
as the plaintiff voluntarily gave credit to Kimberly alone,
knowing his relations with the defendant in the transac-
tions, the defendant never became liable to the plaintiff on
the notes in question, and gave judgment for the defendant.

An examination of the entire pleadings in the case shows
that those parts of the pleadings of which we have recited
the import, that is, the complaint and the first and second
defenses, present the controlling issue in the case, indeed,
the only substantive issue there is in the whole case. The
third and fourth defenses, each of the counter-claims, and
each of the set-offs, are in terms as well as by necessary im-
plication conditioned upon the determination of the main
issue. The first and second defenses, while in form they seem
to present two issues, in reality present but one. They merely
divide one issue into two parts. The plaintiff claimed to
recover of the defendant the amount of the notes in suit on
the ground that the defendant was the undisclosed princi-

pal on whose account Kimberly had given the notes. He alleged that Kimberly and the defendant were partners in the business of buying land, and that by reason of such relation the rule of principal and agent applied. To sustain this claim it was necessary for the plaintiff to show that the defendant and Kimberly were partners, and that he, the plaintiff, dealt with Kimberly as a partner of the defendant. The first defense denied the first part of this proposition. The second defense denied the latter part of it by alleging that the plaintiff dealt with Kimberly as an individual and not as a member of a partnership, and took pay from him.

The judgment settles this main issue. If it is a valid judgment it is conclusive against the right of the plaintiff to recover on these notes, and the questions presented by the appeal arising from the other parts of the pleadings become of no importance. But the plaintiff insists that the trial court committed errors; that the judgment is invalid and should be set aside.

Before proceeding to examine separately the errors assigned by the plaintiff on this part of the case, we recur to the finding to compare and see how far the averments of these pleadings are found to be true and how far they are not so found. It is found that the defendant and Kimberly were partners in the purchase of land as averred by the plaintiff. It is not found that Kimberly had any authority by reason of the partnership agreement to give notes on account of the partnership. The agreement by the defendant to furnish all the money needed for the enterprise implies that notes were not to be used. Nor is it found that he had such authority by usage, or that the defendant by any course of dealing, or even by a single transaction, had adopted the name of Kimberly as a partnership name, or had ever permitted Kimberly to give a note either in his own name or otherwise that should bind the partners. It is found that the plaintiff at the time he took the notes had full knowledge of the relations subsisting between the defendant and Kimberly. And it is also found that the plaintiff took the notes in full payment.

Upon the finding the plaintiff cannot recover the amount of the notes on the ground that they were given according to the partnership agreement or pursuant to any partnership usage. But as the defendant and Kimberly were partners in the purchase of land, and as the land of the plaintiff was purchased for the partnership, the defendant, if that had been all, would doubtless originally have been liable for the purchase money. When a sale is made to one partner, the other partners though undisclosed are liable for the purchase money, because the title vests at once in the partnership. The liability of an undisclosed partner in such a case is the same as that of an undisclosed principal. In a partnership each partner is the agent of, as well as the principal to, each of the other partners in all partnership matters. The liability of an undisclosed principal is not confined to sales, but exists in all cases of considerations executed for the benefit of the principal from which a liability in general assumpsit is raised by law.

Granting that the defendant was liable to the plaintiff for the purchase money of the lands conveyed, the giving of a note, even a negotiable note, in this state would not of itself merge the liability or extinguish the original indebtedness. *Bill* v. *Porter*, 9 Conn., 23; *Fairchild* v. *Holly*, 10 Conn., 175.

The plaintiff's contention proceeds upon the theory that the notes in suit are but another form of the original debt for the purchase price of the land. If they could be so regarded then judgment should have gone against the defendant. The finding, however, clearly contradicts this idea. It is found that " the plaintiff agreed with Kimberly * * * to accept the two notes of Kimberly described in the complaint, secured by a mortgage upon the property in question, *in full payment of the purchase price thereof.*"

When one dealing with an agent has taken pay from the agent, the principal is discharged, whether the principal is disclosed or undisclosed. Story on Agency, §§ 433, 434; Wharton on Agency, § 470; *Humble* v. *Hunter*, 12 Q. B., 310.

If, in the case now in hand, the plaintiff had taken the price of his land in money from Kimberly, the defendant would be discharged because the debt for which he was liable would be paid. If he took the notes in suit and agreed with Kimberly that he would take them in payment for the land, the defendant is equally discharged. The debt for which the defendant was liable is paid in the latter case as much as in the former. Whenever the note of one partner is taken for a partnership debt, *with the agreement that it is taken in payment,* it extinguishes the partnership debt. *Bonnell* v. *Chamberlin,* 26 Conn., 492; *Parker* v. *Canfield,* 37 Conn., 271.

In another aspect the finding is equally decisive against the contention of the plaintiff, for it shows that the defendant was never liable to the plaintiff for the price of the land. It is found that the plaintiff voluntarily gave credit to Kimberly alone, knowing his relations in the transaction with the defendant, relying entirely upon his credit and the security of the notes and the mortgages. If a party deals with an agent knowing him to be such, and voluntarily gives exclusive credit to the agent, the principal is not liable; for in such case the principal is no party to the contract although he may have authorized it and be entitled to the benefit of it. Wharton on Agency, §§ 463, 470; *Jones* v. *Etna Ins. Co.,* 14 Conn., 508; *Beebee* v. *Robert,* 12 Wendell, 417, *per* SUTHERLAND, J; *Silver* v. *Jordan,* 136 Mass., 319; *Brown* v. *Rundlett,* 15 N. Hamp., 360; *Paterson* v. *Gandasequi,* 15 East, 62; *Addison* v. *Gandasequi,* 4 Taunton, 573; *Sage* v. *Sherman,* Lalor's Supplement, 147; *Priestly* v. *Fernie,* 3 Hurlst. & Colt., 977.

Let us now inquire whether the court committed any error in reaching the result. After the defendant's answer was filed the plaintiff moved that both paragraphs of the second defense be stricken out; also that the allegations of that defense be made more specific. These motions were denied. Then the plaintiff demurred to the second defense. The grounds for the motions and the reasons for the demurrer are practically the same, namely, that this defense

does not allege knowledge by the plaintiff at the time he made the election, or when he accepted the notes, of the relations between Kimberly and the defendant; or what those relations were; or the circumstances under which the plaintiff exercised such election; and because said defense is vague and uncertain, and contains an allegation according to its legal effect and does not apprise the plaintiff of the state of facts intended to be proved. The demurrer was overruled. We think there was no error in any of these rulings. A defense to any complaint must be presumed to be applicable to that relation of the parties which is set up in the complaint, unless the defense states other relations. Asking that the defendant should set out in his defense the relations of himself and Kimberly, was like asking that the defendant be required to tell the plaintiff whether the allegations in the complaint were correct or not. Whether or not the plaintiff had " elected " to give, and did give, exclusive credit to Kimberly in the transaction set up in the complaint, was a question of fact. Election in the sense here used means the making an act of choice between two or more courses of conduct, and implies that the act was done under such circumstances that the choice is binding. One of these circumstances is the degree of knowledge possessed by the party choosing. If the plaintiff had made no choice, or if he had made a choice but under such circumstances that the choice was not binding upon him, then he had made no election. These circumstances were to be shown in evidence. They could not properly be stated in the pleadings.

The plaintiff was a witness in his own behalf at the trial, and was asked :—" Did you at any time in 1882, or prior thereto, or in 1883, know that Mr. Wilson Waddingham was a partner with Edward L. Kimberly? " The plaintiff's counsel claimed the question as admissible to prove that, " even if it should appear that the witness knew all the facts concerning the defendant's agreement with Kimberly, yet he did not know as a matter of law that they were

partners." Upon objection the question was ruled out; and we think correctly ruled out.

It is settled by a great multitude of cases as the ordinary rule that a party cannot show his own ignorance of the law for the purpose of avoiding the application of that law to known facts. This is unquestionably the rule as applied in courts of law. *Stowe* v. *Converse*, 3 Conn., 347; *Haven* v. *Foster*, 9 Pick., 112; Broom's Legal Maxims, (7th ed.,) 253, and cases cited; Wharton's Legal Maxims, 93, and the cases there cited.

The rule in equity does not differ materially from the rule so laid down. In Pomeroy's Eq. Jur., § 845, it is stated that "the doctrine is settled that in general a mistake of law pure and simple is not adequate ground for relief. When a party with knowledge of all the material facts, and without any other special circumstances giving rise to an equity in his behalf, enters into a transaction affecting his interests, rights and liabilities, under an error in respect to the rules of law controlling the case, courts will not in general relieve him from the consequences of his mistake. * * * If the mistake of law is not pure and simple, but is induced or accompanied by other special facts giving rise to an independent equity in behalf of the mistaken person, such as inequitable conduct of the other party, there can be no doubt that a court of equity will interpose its aid." No circumstance is found in this case to show why the ordinary rule should not be applied to the plaintiff.

The answer made by the plaintiff to a question asked in cross-examination, that he did not know on the first day of March, 1882, that Mr. Waddingham was responsible for the notes, was properly stricken out because it was not a response to the question asked.

The plaintiff was asked by his counsel:—"Did you at the time you took your notes from Kimberly intend to relinquish or waive any right which you might have against any person or persons who might be responsible for the notes?" He replied, "No sir, I did not." This question and answer were objected to by the defendant's counsel, but it was

agreed that it might come in subject to the exception. The finding adds that the objection was not afterwards referred to during the trial and the court gave it no consideration. The court evidently treated the objection, as the counsel seem to have done, as practically withdrawn.

As already pointed out, the issue formed upon the complaint by the first and second defenses is the only material issue in the whole case. The other issues were not material ones. They were conditional ones, dependent upon the main issue. They were like the branches of a tree which spring out from its trunk. If the tree is cut down the branches fall to the ground and die. It is not necessary to cut off each branch. The main issue in the case having been decided against the plaintiff, all the dependent issues became lifeless. Any finding upon them would have been idle. No one could have been benefited thereby. The record of the case would have been still more confused by utterly worthless matter. The Superior Court treated all these issues as substantially decided by its decision upon the main issue. We are not prepared to say that this was error. We can say that if it was error it was one which has done the plaintiff no harm.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.