WILLIAM T. BRONSON *vs.* WILLIAM LEIBOLD.

Third Judicial District, New Haven, June Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A mutual mistake as to the legal rights of the parties under a contract is one in the nature of a mistake of fact, and equity often treats them as such and affords relief accordingly.

The distinction between mistakes of law and those of fact, while still recognized, is of little practical value, and its foundation in reason is extremely uncertain.

Relief will always be granted against a mistake of law when the surrounding facts raise an independent equity in behalf of one suffering through the mistake.

Equity will not allow one to enrich himself unjustly at the expense of another, through or by reason of an innocent mistake of law or fact entertained by the loser or by both.

A purchaser and occupant of land under a contract of sale which he had but partially fulfilled, mistakenly supposing that he had forfeited all his rights thereunder and that he would shortly be ejected by the vendor, who shared in and confirmed this belief, offered to and did quitclaim all his interest in the property back to the vendor without consideration, although it had greatly increased in value owing to substantial improvements made by the occupant while in possession under the contract. Upon learning his rights a few days later, he obtained a loan of the amount necessary to complete the purchase price, which he tendered to the owner and demanded a conveyance of the property in accordance with the terms of the contract, both of which the owner refused. *Held:*—

1. That upon the facts found the mistake was both mutual and material.

2. That the relation between the parties was similar to that between a mortgagor and mortgagee, and that equity would protect the vendee, as it would a mortgagor, against forfeiture.

3. That the vendor's acceptance of belated payments made by the vendee operated as a waiver of the former's right to insist upon a forfeiture for a failure to comply strictly with the prescribed dates of payment.

4. That it was not essential that fraud upon the part of the vendor should be alleged or shown in order to secure the relief sought.

5. That even if the mistake in question were regarded as purely one of law, the vendee would not, under the circumstances, be denied relief upon that ground.

Although a tender by a mortgagor, after forfeiture, to his mortgagee, will ordinarily stop the running of interest, it will not necessarily have that effect where the mortgagor neither has the money on hand nor loses any interest himself on the amount so tendered. Under such circumstances this court cannot say that it is inequitable to require the debtor to pay interest upon the amount tendered by him.

General Statutes, § 536, provides that the Court of Common Pleas in Fairfield county shall have jurisdiction of civil actions wherein the relief, legal or equitable, severally and distinctly demanded, exceeds $500 and does not exceed $2,000; and § 541 provides that the amount of the matter in demand, in a suit to redeem mortgaged property, shall be deemed to be the amount of the debt or liability thereby secured. *Held* that a suit to set aside a quitclaim deed of land in which the grantor and plaintiff had an interest of less than $2,000, and to vest the title to such land, which was worth not more than $3,500, in the plaintiff upon payment by him of a balance of $1,700 or $1,800 due on the purchase price, was analogous to an action to redeem mortgaged property, and was properly adjudged by that court to be within its jurisdiction.

Argued June 3d—decided July 25th, 1913.

ACTION to recover rent, brought by appeal from a judgment of a justice of the peace to the Court of Common Pleas in Fairfield County and tried to the court, *Scott, J.;* facts found and judgment rendered for the defendant on his counterclaim, and appeal by the plaintiff. *No error.*

The defendant also appealed upon the ground that the judgment should not have required him to pay interest upon the amount tendered by him to the plaintiff. *No error.*

On October 17th, 1903, the plaintiff and defendant executed an agreement by which the plaintiff agreed to

sell the defendant his farm and to give him a deed of the same upon his paying therefor $2,000 in different payments at named dates. The value of the premises did not exceed $2,000 at the time of sale.

The defendant entered into possession and worked hard upon the place and made substantial improvements thereon, expecting to own it, which increased its value, and through these and a general rise in farm land it was on May 5th, 1910, worth $3,000, and has ever since been worth at least that amount.

The defendant had made various payments on account of the purchase price, although not at the times or in the amounts provided in the contract; but these were received by the plaintiff and applied thereon. For four years prior to May 5th, 1910, the defendant was at all times in arrears as to payments of principal, interest, taxes, and insurance; and on said date the unpaid balance of the purchase price was between $1,700 and $1,800. The plaintiff had paid at different times $117.47 for insurance and taxes.

About a month prior to May 5th, 1910, the defendant was behind in his payments, and the plaintiff called upon him to pay the same; and on said date his attorneys wrote the defendant that the plaintiff "has been in to see us in regard to the contract that you had with him," and requested him to call. The defendant was poor, with a large family, and unable to pay up the arrears without assistance. He did not then know he had a legal right to tender the plaintiff the balance due and demand a deed; he believed he had lost his rights under the agreement, by reason of his failure to keep up the payments, and that the plaintiff would eject him from the place where he was living with his wife and dependent children.

On the last-mentioned date the defendant, who was a foreigner without experience or knowledge of legal

matters, while in a discouraged state of mind, and thoroughly alarmed and in ignorance of his legal rights, went to the attorneys in response to their letter and offered the place back. They referred him to the plaintiff. On the same day the defendant saw the plaintiff and offered to give the place up. The plaintiff was much the superior of the defendant in education. The plaintiff told him this was the best thing to do, that the defendant had violated his agreement, and that he, the plaintiff, had decided to take it back. The plaintiff confirmed the defendant in his belief that he had no further rights in the property, and that he was about to take possession of it. Both plaintiff and defendant then believed that the defendant had forfeited his rights under the agreement and could be ejected. On the same day the defendant executed a quitclaim deed of the place to the plaintiff, who at the same time leased the premises to him for one year from April 1st, 1910. There was no consideration for the deed unless it be the lease.

There was no fraud, concealment, or deceit practiced upon the defendant by either the plaintiff or his attorneys.

A few days after May 5th, 1910, the defendant for the first time consulted counsel and learned his legal rights, and also found some one who would lend him the balance due under the agreement. On May 16th, 1910, the defendant tendered the amount due under this contract and demanded a conveyance of said premises. The plaintiff refused the tender, and declined to execute the conveyance. The defendant has ever since been ready and willing to pay the plaintiff whatever is due under the contract.

*J. Moss Ives* and *Robert S. Alexander,* for the appellant (plaintiff).

*Frank M. Canfield,* for the appellee (defendant).

WHEELER, J.   The plaintiff insists that the defend-
ant, upon the facts, is not entitled to the relief granted
because, (1) the mistake upon which the decree rests
was not material, nor the determining ground of the
transaction against which relief is sought, (2) nor was it
mutual, (3) nor was it a mistake of fact but one of law.

We think the facts found show a mutual mistake of
both plaintiff and defendant.   Both believed the de-
fendant had lost his rights under his contract.   But
equity would not refuse him aid though the mistake
were not mutual.

Likewise the facts found point to this mistake as the
determining reason for the release of the defendant's
interest under the contract, and indicate that it was a
material mistake.

Was it of so material a character as to warrant the
cancellation of the deed?   This contract created between
the plaintiff and defendant the relation of vendor and
vendee under an agreement of purchase and sale of land;
and equity protects the vendee as it would a mortgagor
against forfeiture.   2 Swift's Digest, 100.   The plaintiff
had accepted payments of the defendant upon the con-
tract at times other than those contracted for.   He thus
waived his right to insist upon a forfeiture for failure to
comply strictly with the contract.   The defendant at
the time he gave the plaintiff a release of his interest in
the property under the contract had the right to redeem,
and no legal proceeding less than a foreclosure could
have ousted him from possession.   The defendant be-
lieved that he had lost his rights in this property, and
as a consequence that the plaintiff would eject him.
He did not know he had the right to tender the amount
of his debt and demand a deed which the plaintiff must
give.   The plaintiff and his attorneys entertained a simi-
lar belief that the defendant had forfeited his rights
under the contract, and they confirmed the defendant

in this belief. No fraud was practiced, and none was necessary to be alleged or proved to secure the relief sought. The mutual mistake was as to the legal rights of the defendant arising out of the contract.

Mistakes of this character partake of the nature of mistakes of fact, and equity often treats them as such and affords relief. *Butterfield* v. *McNamara*, 54 Conn. 94, 98, 6 Atl. 188; *Blakeman* v. *Blakeman*, 39 Conn. 320. Though this were held to be purely a mistake of law, the defendant would not, under the circumstances of the case, be denied relief upon that ground. While authorities still recognize a distinction between mistakes of law and mistakes of fact, the distinction is of little practical value, and its foundation in reason extremely uncertain. *Park Bros. & Co.* v. *Blodgett & Clapp Co.*, 64 Conn. 28, 33, 29 Atl. 133. Equity always relieves against a mistake of law when the surrounding facts raise an independent equity in behalf of one suffering through the mistake. *Usher* v. *Waddingham*, 62 Conn. 412, 429, 26 Atl. 538. And it will not allow one to enrich himself unjustly at the expense of another, through or by reason of an innocent mistake of law or fact entertained by the loser or by both. *Park Bros. & Co.* v. *Blodgett & Clapp Co.*, 64 Conn. 28, 34, 29 Atl. 133.

This case falls within each of these principles. Its facts create an independent equity in behalf of the defendant, which would make it unjust that he should lose the right to redeem his homestead through his own innocent mistake and thereby enrich the plaintiff at his own expense, when he has acted diligently in the protection of his rights. The defendant was ignorant, poor, harassed, and discouraged. He believed that he had forfeited his interest in the place he had hoped to have owned, and that the plaintiff was about to eject him. The plaintiff, in good faith, confirmed his mistaken belief. His equity was substantial and to him

large; he released it in consequence of his mistaken belief when in this disturbed state of mind, without consideration to himself, and thereby enriched the plaintiff at his own expense. Immediately upon learning his rights, and within a few days after he had released his interest, the defendant made his tender and demand. The plaintiff refused because he knew that the property was then worth more than it was when he sold it. It would be highly inequitable to permit the plaintiff to retain the place which the defendant has, from almost the moment of learning of his legal rights, made every effort to redeem. "When one has obtained such an advantage over another by reason of that other's mistaken view of his legal rights that it would, under the circumstances, be unconscionable for him to retain it," equity will not allow him to do so. *Monroe National Bank* v. *Catlin*, 82 Conn. 227, 231, 73 Atl. 3.

The plaintiff moved to dismiss the amended counterclaim because it therein appeared that the value of the subject-matter was beyond the jurisdiction of the court.

The Court of Common Pleas for Fairfield county has jurisdiction of all civil actions wherein the relief, legal or equitable, severally and distinctly demanded, exceeds $500 and does not exceed $2,000. General Statutes, § 536.

The relief prayed for the cancellation of the deed and a reconveyance of the premises to the defendant upon payment of the amount due under the original contract of sale, and further for $2,000 damages. The amended counterclaim alleged that the premises were worth from $3,000 to $3,500, the balance due under the contract between $1,700 and $1,800, and hence the interest of the defendant in the premises was not to exceed $1,800. We have already pointed out that the relation between the parties to the contract was similar to that between mortgagor and mortgagee. The counterclaim

in effect seeks to redeem the premises from the plaintiff's claim therein. It is similar to a petition to redeem mortgaged premises and thereby obtain permission to pay money and remove an incumbrance thereon. The amount of the debt is by General Statutes, § 541, deemed to be the amount of the matter in demand and not the value of the mortgaged premises. *Blakeslee* v. *Murphy*, 44 Conn. 188, 195; *Bridgeport* v. *Blinn*, 43 Conn. 274, 280. In this case the debt was within the jurisdiction of the court. Had the plaintiff sought to foreclose the defendant, the jurisdiction would have been determined by the debt due, which, in this case, was within the jurisdiction of the court. When the defendant seeks to redeem, the same remedy is open to him. The matter in demand in no event could be held to exceed the defendant's interest in the premises which he had released by his deed, and which he asks to have cancelled or a conveyance of the premises made to him upon payment of the amount due under the contract; and this interest was less in value than the maximum jurisdiction of the court, and so, too, was the tender provided for in the judgment. The motion to dismiss was properly denied.

The defendant's appeal assigns as error the inclusion by the court of interest subsequent to the tender.

As a general rule a tender by a mortgagor to his mortgagee after forfeiture will stop interest, though the mortgagee refuses to receive the tender. But the mortgagor must pay the money into court or keep the tender good. Hunt on Tender (1903 Ed.) §§ 346, 347; *Thayer* v. *Meeker*, 86 Ill. 470, 474. If he holds the money tendered in hand, it is inequitable to compel him to lose the interest upon this, and thereafter, when his creditor is by the decree forced to accept it, be compelled to pay interest upon the tender. In this case the finding is that the defendant has been ready and willing to

pay the amount of the tender, but the subordinate facts, especially those detailed in the counterfinding, indicate that the defendant has not had the money in hand, nor lost the interest upon the amount tendered. The trial court no doubt concluded that it would be inequitable to permit the defendant to retain possession, lose no interest on the tender, and force the plaintiff to lose possession and interest. We cannot say that it was inequitable under the situation presented in this case to add interest upon the amount of the tender.

There is no error.

In this opinion the other judges concurred.