JOSEPH FIALA *vs.* CONNECTICUT ELECTRIC SERVICE
COMPANY.

JOSEPHINE FIALA *vs.* CONNECTICUT ELECTRIC SERVICE
COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 21st, 1931—decided January 19th, 1932.

*James W. Carpenter,* with whom was *Edward M. Day,* for the appellant (defendant).

*L. Horatio Biglow,* with whom, on the brief, was *Rollin U. Tyler,* for the appellees (plaintiffs).

HAINES, J.   The substance of the complaint in the first case is that on February 14th, 1928, the plaintiff was the owner of thirty-six shares of the stock of the defendant corporation, which stood in his name on its books and for which he held the certificate; that on that day the certificate was wrongly taken from his possession and presented to agents of the defendant company, who negligently and wrongfully transferred the stock and issued a new certificate therefor to Roger W. Watkins; that the certificate was thus taken from his possession without his knowledge or consent and without negligence on his part, and without any authority having been given by him to deliver or endorse the same for transfer; that the plaintiff did not discover the loss of his certificate for a considerable period of time, but after discovering it, he made demand on February 3d, 1929, upon the defendant, for a new certificate and for the dividends which had accrued in the meantime, or in default thereof, for the value of

the stock and dividends with interest, but the defendant refused.

In the second case the plaintiff alleged that she was the owner of fifteen shares of the defendant's stock with a certificate in her name and in her possession, and she makes similar allegations as to the wrongful endorsement and delivery of her certificate to Watkins, and the issuance by the defendant of a new certificate therefor in his name, without authority or right, and alleges a like demand upon the defendant and a refusal. The answer in each case was a general denial and upon trial judgment was rendered for the plaintiff.

Many requested changes in and additions to the finding in both cases were denied by the court and they appear here as assignments of error with evidence certified for our inspection. The uncontested fact appears that the endorsement of these certificates was made by Maria, the wife of Joseph and mother of Josephine, and that she delivered them to a representative of Watkins & Company in part payment for a purchase by her of certain shares of stock in a company then being promoted by Watkins & Company and known as the National Associated Investors' Company, which proved to be worthless.

The gist of the complaint in both actions is that the endorsement and delivery of the certificates by Maria was in the nature of forgery and that she acted without any authority or permission, actual or implied; that there was no negligence on the part of the plaintiffs; and that the acceptance and cancellation of these wrongfully endorsed certificates by the defendant and the issuance therefor of certificates to Watkins was illegal, rendering the defendant responsible to the plaintiffs.

The trial court filed a finding January 2d and re-

filed it January 12th, and after the defendant's motion for numerous and detailed changes and corrections, filed a new, corrected and amended finding March 7th. This amended finding shows much care in preparation. Many of the requests which were refused have reference to matters not important to the decision of this case; others sufficiently appear in the finding as made and some are inferences which the court refused to draw from the evidence, while many of the additions sought to be made are not based upon undisputed or admitted facts. We have been unable to discover any subordinate fact of importance appearing in the finding which is not either directly supported by some evidence or which is not a logical inference drawn by the trial court. " 'It is not essential that statements of fact in a finding should always be supported by direct evidence. It is enough if the circumstances fairly warrant the inference or conclusion stated.' " *City Bank & Trust Co. v. Ruthinian Greek Catholic Church*, 102 Conn. 609, 610, 129 Atl. 725. Nor are we able to discover any claimed undisputed or admitted fact of importance to the decision, which has been omitted from the finding. The task of checking these assignments has been rendered extremely difficult by the fact that the exceptions are to paragraphs of the original finding and to a "proposed new finding" rather than to the corrected and amended finding; but we are satisfied from a careful examination of the evidence, that we cannot change the latter. Taken together, these assignments seem to justify the contention of counsel for the plaintiff that they are in their effect an invitation to this court to retry the factual situation. There was much conflicting evidence and it is apparent that counsel for the defendant firmly believed and still believe that much of the plaintiff's testimony was

false, and this belief is reflected in the attempted changes in the finding. This view was apparently not shared by the trial court, whose province it was to determine the matter of credibility. Our study of the record does not force us to accept the conclusion of the appellant, that much testimony which was obviously accepted by the trial court as true was in fact "false, preposterous, absurd, illogical and illegal.". The case is, therefore, sharply distinguished in its facts, from that cited by the appellant wherein we said that our rule of law "never permits a manifest fraud to prevail even though there be witnesses who testify in contradiction of the conclusion of fraud." *Levy* v. *Bromberg,* 108 Conn. 202, 204, 142 Atl. 836. The appellant states that "a substantial part of this appeal seeks to correct the finding, in spite of the fact that some of the plaintiff's uncorroborated testimony tends to support it, until carefully analyzed as constituting conclusions of law," and we have, therefore, given the record testimony that careful and detailed examination which the appellant's extreme position seems to call for. In reaching our conclusion that the finding is justified, we are not passing upon the credibility of the testimony upon which it is based. That is not our province. "It is firmly settled by the decisions of this court that our jurisdiction does not extend to the retrial upon the testimony, of the facts, based on some evidence, on which the judgment of a trial court, proceeding according to the rules of law, is founded. And it is immaterial whether such retrial is sought under the claim that the court erred in reaching a conclusion of fact from the testimony, or under a claim of error in law because a judgment, plainly valid upon the facts settled by the trial court, would be as plainly invalid if it had been rendered on different facts such as

might be settled by this court after a retrial on the evidence. The thing actually sought, in either case, is a retrial of facts by an appellate court whose jurisdiction relates only to the correction of errors in law." *Thresher* v. *Dyer,* 69 Conn. 404, 408, 37 Atl. 979; *DeFeo* v. *Hindinger,* 98 Conn. 578, 581, 120 Atl. 314; *Dexter Yarn Co.* v. *American Fabrics Co.,* 102 Conn. 529, 537, 129 Atl. 527. Our task is to say whether this testimony is such that we must hold the action of the trial court in accepting it to be so unreasonable, illogical or illegal, that we are justified in setting aside the conclusions of fact which have been reached. We are unable to so hold, and this applies to both cases.

The appellant claims, in the first case, that the action of the wife in endorsing the name of the plaintiff on his certificate of stock, was not a forgery, but that in any event it was ratified by the plaintiff by his conduct and by signing a proxy for the National Associated Investors' stock; that the plaintiff has been guilty of negligence in enforcing his rights and is therefore barred of recovery; that the plaintiff lost title to this certificate before this suit was brought, and that he is now estopped from enforcing the claim · in this action.

The trial court found as a fact that the plaintiff did sign a proxy for voting upon the stock of the National Associated Investors' Company standing in his name, and that he had previously addressed an envelope containing a letter which had been written by his wife, to one of the attorneys for the receiver of that company. It is also found that in both instances he did so at the request of his wife, in the belief that it had to do with some stock which his wife had purchased, but without negligence and without knowledge on his part that his Connecticut Electric Service stock had

been disposed of by her in payment for the National Associated Investors' stock. It is also found that when the plaintiff discovered that his certificate had been disposed of, he took prompt steps to recover his property, and that he was in no way guilty of negligence in failing to sooner discover his loss. As already indicated, we cannot refuse to accept these findings of the trial court. The defendant also contends that the conduct of the plaintiff in permitting his wife to deal with his property on several occasions and to have access to the certificates, which were kept in a bureau drawer at the family home, was negligent conduct. The adverse holding of the trial court upon this phase of the case is supported by sound principles. The mere fact that the plaintiff had confidence in his wife, and by his conduct made it possible for her to commit a fraud upon him and the company by the unauthorized signing of his name upon the certificates, did not make his loss the natural or probable result, because the forgerous signing of his name was only a remote and not a natural or probable consequence of his conduct. *Hill* v. *Jewett Publishing Co.*, 154 Mass. 172, 28 N. E. 142. So also the fact that the plaintiff kept his certificate in his home, where his wife had access to it, is not such negligence as precludes his recovery in this action, since it is the forgerous use of his name, and not the access to the certificate, which is the proximate cause of the imposition of liability upon the defendant company. *Pennsylvania Co.* v. *Franklin Fire Ins. Co.*, 181 Pa. St. 40, 37 Atl. 191. The appellant puts much emphasis upon its claim that this act of the wife in endorsing the certificates with the plaintiffs' names and delivering them to a third party in exchange for worthless stock, was not forgery, and cites General Statutes, § 6358. It is immaterial whether her act meets the exact definition of forgery

therein contained. That is a criminal statute, and proof of all the elements of that crime was not essential to recovery in this action, whether we call her act a forgery, forgerous or fraudulent. It is found that it was not authorized, directly or impliedly, and was not ratified or confirmed; nor can the plaintiff's conduct as disclosed by the finding, work an estoppel against him in this action. The present suits rest upon the provisions of our statute: "title to a certificate and to the shares represented thereby may be transferred only by delivery of the certificate endorsed either in blank or to a specified person, by the person appearing upon the certificate to be the owner of the shares represented thereby, or by delivery of the certificate and a separate document containing the written assignment of the certificate, or a power of attorney to sell, assign or transfer the same, or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby." General Statutes, § 3429; *Kresel* v. *Goldberg,* 111 Conn. 475, 477, 150 Atl. 693. These certificates of the Electric Service Company in evidence, contain upon their face the provision that the certificate is "transferable on the books of the company by the holder hereof in person or by duly authorized attorney, upon the surrender of this certificate properly endorsed." The remedy for an unauthorized transfer is also statutory: "If the delivery of a certificate was made without authority from the owner or after the owner's death or legal incapacity, the possession of the certificate may be reclaimed and the transfer thereof rescinded unless the certificate has been transferred to a purchaser for value, in good faith, without notice of any facts making the transfer wrongful, or the injured person has elected to waive the injury or has been guilty of laches in endeavoring to

enforce his rights." General Statutes, § 3436. The forgerous act of the wife in this case, conferred no power upon the defendant to make the transfer. The defendant's officers have the custody of its books and the responsibility is theirs to see to it that every transfer of their shares is legally and properly made. Such transfer can only be made by the stockholder whose name appears on the certificate presented, or by some one acting under a valid power of attorney executed by such stockholder, or other legal authority. If the officers are in doubt as to the identity of the owner and the party signing and presenting the certificate for transfer, or as to the genuineness of a power of attorney which is presented with or appearing upon the certificate, they are entitled to refuse the transfer until the identity of the party or the genuineness of the power are established. It is true they may possibly be misled on occasion and without fault of their own, but their responsibility remains, and whether they acted in good faith or negligently or corruptly, the demand of the true owner who is acting in good faith, must be recognized. It is fundamental that no man may be deprived of his property save by legal processes, and if the officers of a corporation transfer a certificate endorsed by one other than the registered owner and without his authorization and assent, express or implied, the corporation must restore it to him on demand. *Western Union Telegraph Co.* v. *Davenport,* 97 U. S. 369, 372, 373. In the case cited, the corporation strenuously urged that the plaintiff, who was the guardian of the owners of the certificates, was guilty of culpable negligence in entrusting the key of her deposit box to her brother when she knew that he was insolvent and had previously used other funds of hers without authority, and in failing to earlier examine the contents of her box, and it was insisted

that that was negligent conduct which estopped her of recovery. The court remarked: "We do not think it at all necessary to comment at any length upon this singular position. . . . There is no circumstance here upon which an estoppel against the plaintiffs can be raised. To create an estoppel against them, there must have been some act or declaration indicating an authorization for the use of their names, by which the company was misled, or a subsequent approval of their use by acceptance of the moneys received with knowledge of the transfer."

These principles by which the rights and remedies of a holder of corporate stock are defined and enforced, are, we believe, supported by all recognized authorities without dissent. *Chew* v. *Bank of Baltimore,* 14 Md. 299; *Baltimore* v. *Ketchum,* 57 Md. 23; *Pratt* v. *Taunton Copper Mfg. Co.,* 123 Mass. 110; *Pratt* v. *Boston & Albany R. Co.,* 126 Mass. 443; *Pollock* v. *National Bank,* 7 N. Y. 274; *Pennsylvania Co.* v. *Franklin Fire Ins. Co.,* 181 Pa. St. 40, 37 Atl. 191; *Chicago Edison Co.* v. *Fay,* 164 Ill. 323, 45 N. E. 534; *St. Romes* v. *Levee Steam Cotton Press Co.,* 127 U. S. 614, 8 Sup. Ct. 1335.

The application of these principles to the facts established by the findings, justified the conclusion and judgment of the trial court in each case.

There is no error.

In this opinion the other judges concurred.