HOME OWNERS' LOAN CORPORATION ET ALS. *v.* JOSEPH NASIATKO ET AL.
HOME OWNERS' LOAN CORPORATION *v.* ANTHONY R. NASATKO.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, JS.

Argued March 6—decided April 10, 1942.

*Maurice J. Buckley,* for the appellant (plaintiff).

*Stanley Plocharczyk,* with whom was *Joseph F. Ryter,* for the appellees (defendants).

BROWN, J.  The difficulties which eventuated in this litigation stem from the fact that the plaintiff made a loan and took a mortgage on a vacant lot, supposing

that the property mortgaged was an adjacent lot on which there was a house. This second lot has at all times belonged to a stranger. The plaintiff is seeking to subject it to the lien of its mortgage. The actions were tried together and the court found these material facts: On June 10, 1926, James M. and Mary T. Curtin, owners of a tract of land in New Britain which they had laid out into building lots separately numbered as shown on a map duly filed in the town clerk's office, sold lot No. 51 to Cornelius and Nellie Shine by warranty deed. The deed described the lot as No. 51 shown on the map, fronting fifty feet on the southerly side of Pentlow Avenue commencing on the east at a point four hundred and eighty-one feet west from the westerly line of Farmington Avenue, stated the courses and distances, and bounded it on the west by lot No. 50 and on the east by lot No. 52, referred to as other land of the grantors. Prior to June 22, 1929, the Shines intended to build a house on this lot, but actually built it on lot No. 50, title to which was in the Curtins. The east line of lot No. 50 was five hundred and thirty-one feet from the west line of Farmington Avenue. The Shines by the exercise of reasonable care could have definitely located the boundaries of lot No. 51. No explanation as to why the house was built on lot No. 50 was offered in evidence. On November 27, 1933, the Shines borrowed $3700 of the plaintiff and mortgaged lot No. 51 to it as security by a deed having the same description contained in the Curtins' deed to them. The Shines became in default on this mortgage and in lieu of foreclosure on September 11, 1936, quitclaimed lot No. 51 to the plaintiff, using the same description. On May 6, 1939, the plaintiff agreed to sell lot No. 51 "with all the buildings and improvements thereon" to the defendant Anthony Nasatko for $3250, and on June 1,

1939, gave him a quitclaim deed of lot No. 51 as shown on the map, with the buildings thereon, and containing the same description used in the Curtins' deed to the Shines. On the same day the defendant Anthony delivered a purchase money mortgage for $2700 to the plaintiff. This deed, which referred to the house at "52 Pentlow Street," contained the same description. The only house then standing on Pentlow Avenue was the one erected by the Shines on lot No. 50. The plaintiff still owns this note and mortgage.

On May 5, 1939, James M. and Geraldine Curtin and Madeline Hayes, the then owners of the remaining land in the tract shown by the map, by warranty deed conveyed lots No. 49 and 50 to the defendant Stanley Nasiatko for $250. This deed described the lots as Nos. 49 and 50 on the map, fronting one hundred feet on the southerly side of Pentlow Avenue commencing on the east at a point five hundred and thirty-one feet west from the westerly line of Farmington Avenue, stated the courses and distances, and bounded the land conveyed on the west by lot No. 48 of the grantors and on the east by lot No. 51 of the plaintiff. At the time of this conveyance none of the parties to it actually knew that the Shine house was built on lot No. 50. During August, 1939, it was discovered that this house had been built on lot No. 50. On August 29, 1939, the defendant Stanley by warranty deed conveyed lots No. 49 and 50 to his brother the defendant Joseph. Both of these defendants then knew that the house was on lot No. 50. The defendant Anthony is also a brother of these defendants. All of the deeds above referred to were duly recorded.

Neither in the Curtins' deed to the Shines nor in their deed to the defendant Stanley was there any error or mistake in the description of the particular lot or lots intended to be conveyed and actually con-

veyed, or in the conveyancing of the lot or lots intended to be conveyed, but the respective descriptions were correct in every particular. The sole mistake in so far as the first case is concerned was the action of the Shines in erecting a house on lot No. 50 which at the time belonged to the Curtins.

In the first action the plaintiff claimed that the defendant Joseph be ordered to convey lot No. 50 to the defendant Anthony as security and for the protection of its mortgage. The court rendered judgment for the defendant and the plaintiff has appealed. The plaintiff claims that by mutual mistake the deed from the Curtins to the Shines described lot No. 51 instead of lot No. 50 as intended by the parties and that by reason thereof as successor in title to the Shines it is entitled to have the defendant Joseph ordered to convey lot No. 50 to the defendant Anthony as protection for its mortgage. The allegations of the plaintiff's complaint are that the lot conveyed was lot No. 51 and that the Shines intended to erect a house on lot No. 51 but by mistake it was erected on lot No. 50, which was then owned by the Curtins, and there is no allegation that there was any mistake in the conveyance of lot No. 51 instead of lot No. 50 to the Shines. Any claim of such a mistake was not within the issues presented by the pleadings in the case and could not properly be adjudicated in this action. Whether the court was correct in finding on the evidence before it that there was no such mistake is not of consequence.

The plaintiff further claims that, even though the Shines built the house on lot No. 50 by mistake believing this to be lot No. 51, which they had bought, as against the Curtins the Shines had a cause of action for damages on the ground of unjust enrichment and that "by this same rule in equity, the Shines and their successors in title would be entitled to a reformation

of their deed," citing *Schleicher* v. *Schleicher*, 120 Conn. 528, 534, 182 Atl. 162. With this as a basis the gist of the plaintiff's argument appears to be that as the successor in title to lot No. 51 it has a right to have lot No. 50 subjected to its mortgage. No right of reformation is so much as mentioned in the *Schleicher* case. It is not authority for the plaintiff's proposition above quoted. As applied to the question we are considering, upon the facts in the instant case it is only authority that the Shines might have had a claim for the amount by which the value of lot No. 50 was enhanced by the improvements which they had made upon it in good faith, in the event that the Curtins or their successors in title asserted dominion over it. Such right as thus existed in the Shines would be only for the recovery of money damages and would not be a basis for a decree transferring title to lot No. 50. Whether or not, by reason of the deed from the Shines to the plaintiff, the latter would be regarded in equity as the equitable assignee of that claim is not before us for adjudication in this action.

In the second action, for the foreclosure of the plaintiff's mortgage, wherein the defendant Anthony on his cross-complaint claimed a cancellation of the note and mortgage and the recovery of the money which he had paid, the court found these further facts: It was the purpose of the defendant Anthony in purchasing the property under his contract with the plaintiff of May 6, 1939, to buy a house and lot. During the negotiations the plaintiff's agent pointed out to Anthony the house on lot No. 50 and represented that the plaintiff owned the house and the lot on which it stood. In consequence thereof and reasonably relying upon these representations, Anthony entered into the contract of purchase, and thereafter the plaintiff gave him a deed purporting to sell and convey to him lot

No. 51 with the building thereon for $3200 and Anthony gave back the purchase money mortgage for $2700. At the time neither the plaintiff's agent nor Anthony knew that the house stood upon lot No. 50. So far as appeared the plaintiff's agent made no effort to ascertain whether or not the house stood upon lot No. 51 but relied upon the deeds of record. In executing the contract, the deed and the mortgage back, the parties acted under a mutual mistake that the house stood on the plaintiff's lot No. 51. The plaintiff intended to sell and the defendant to buy a lot upon which was a house and not a vacant lot. After discovering that there was no house on the lot Anthony demanded rescission of the sale and the return of his payments, totaling with interest $704.42. The mortgage and note are due. The court concluded that there was a mutual mistake which equity ought to correct, that the deed to the defendant and his mortgage to the plaintiff should be cancelled, and that he should recover the amount paid. It entered judgment for the defendant on the complaint, and on the cross-complaint cancelling the deed and mortgage and for the recovery of $704.24 damages. From this judgment also the plaintiff has appealed. The facts found, which are not subject to correction, present a clear case of mutual mistake which entitled the defendant to the relief granted. 5 Pomeroy, Equity Jurisprudence (4th Ed.), § 2106; 9 C.J. 1166, § 17; 12 C.J.S. 978; *Butler* v. *Barnes,* 60 Conn. 170, 186, 21 Atl. 419; *Snelling* v. *Merritt,* 85 Conn. 83, 101, 81 Atl. 1039; *Corticelli Silk Co.* v. *Slosberg,* 101 Conn. 44, 50, 124 Atl. 818.

There is no error upon either appeal.

In this opinion the other judges concurred.