GILBERT L. FITCH ET AL. *v.* STATE OF CONNECTICUT

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued December 5, 1951—decided February 12, 1952

*William L. Beers*, deputy attorney general, with whom, on the brief, was *George C. Conway*, attorney general, for the appellant (defendant).

*Frank J. DiSesa*, for the appellees (plaintiffs).

INGLIS, J. The first count of the complaint in this action alleges that a quitclaim deed given by an ancestor of the plaintiffs purporting to convey to the defendant his reversionary interest in land was executed under a mistake of fact and that the condition upon which the reverter depended had occurred. In their prayers for relief, the plaintiffs requested the court to declare that the deed was null and void and that legal title had reverted to them. The second count of the complaint is not involved in this appeal.

The case was referred to a state referee and he made a report containing a finding of the following facts: By deed dated June 27, 1864, Benjamin Fitch conveyed certain land and buildings in Darien to Fitch's Home for the Soldiers, a corporation existing under the laws of this state. The deed of conveyance contained this provision: ". . . it being understood that the said premises shall revert to the Grantor or his legal representatives if diverted from the uses and purposes contemplated by and set forth" in the act incorporating the grantee. Those purposes were to devote its funds, including the real estate, primarily to the support of persons "who shall be, or shall have been, soldiers of this state in the service of the United States" and their

children. 5 Spec. Laws 585 §§ 4, 5. The act (§ 3) also contained the provision that the "corporation shall not sell or convey away the real estate to be given to it by [Benjamin] Fitch, but shall keep the same forever." Thereafter and until 1940 the premises were used as a home for soldiers known as Fitch's Home for the Soldiers.

Benjamin Fitch died November 7, 1883, and on March 11, 1884, all of his heirs and next of kin other than Francis S. Fitch quitclaimed all of their interest in the property to Francis S. Fitch so that he then became the sole owner of the reversionary interest. For some time prior to 1917 the federal government had appropriated the sum of $25,000 annually for the support of the home. On March 8, 1917, the executive secretary to the then governor of the state, at the latter's direction, wrote Francis S. Fitch that the federal authorities had informed the state that unless title to the entire property was placed in the state no more federal aid would be forthcoming. The letter stated that there would probably be no difficulty in authorizing the Fitch's home corporation to transfer title and that, therefore, the only thing which stood in the way of the state's continuing to avail itself of the federal grant was the reversionary interest held by Francis S. Fitch, which, it was stated, was a distinct interest in the property. The letter pointed out that this interest was of no great value because of the extreme unlikelihood of the property's being used for any other purpose than a soldiers' home and that probably the home would continue to be maintained without the federal grant but its activities would have to be curtailed. The letter then requested that Fitch execute a release of the reversionary interest either to the home or to the state. As a result of this letter and some further correspondence, Francis S. Fitch, by quitclaim deed dated March

14, 1917, for himself and his heirs transferred to the state of Connecticut all of his right, title and interest in the property by way of reversion or otherwise. There was no consideration moving to Fitch for this conveyance other than the desire on his part to enable the state to secure the federal aid for the fulfilment of the purposes of the home. Fitch died November 3, 1926, and the plaintiffs are his only heirs and next of kin and the distributees of his estate. By quitclaim deed dated September 6, 1927, the corporation, Fitch's Home for the Soldiers, conveyed the premises to the state of Connecticut.

The discontinuance of the use of the property as a soldiers' home was first considered in 1937. The buildings had then fallen into disrepair and applications for admission had greatly increased owing to the large number of veterans of World War I. Ultimately, the state built a veterans' home at Rocky Hill. On August 28, 1940, it removed the veterans from Fitch's Home to the new home in Rocky Hill and abandoned the property in question for use as a soldiers' home and for any of the purposes specified in the special act incorporating Fitch's Home for the Soldiers.

From the foregoing subordinate facts and the evidence as a whole, the referee drew the following inferences: The sole purpose of the defendant in soliciting the conveyance made by Francis S. Fitch was to perpetuate the use of the property as a home for soldiers by enabling the state to receive federal aid. It was not the intention of the state in soliciting the deed nor the purpose of Fitch in executing it to enable the state to abandon the use of the property as a home for soldiers and secure the ownership of the property free of the reversionary interest. Fitch would not have executed the deed had he not acted under the mistaken belief that it was a necessary step to be taken in order

that the property could legally be conveyed by the corporation to the state and thus make more certain the perpetuity of the trust through the continuance of the federal aid. "There was no evidence that the Federal Government objected to the continuance of the Federal grant because of the reverter clause in the deed of Benjamin Fitch, or required a release thereof. The only demand of the Federal Authorities was that the title to the land and buildings should be vested in the State rather than in the corporation named as grantee in the deed of Benjamin Fitch."

The defendant remonstrated to the report on the ground that these inferences were not warranted by the subordinate facts or the evidence. The trial court overruled the remonstrance, concluded that it would be inequitable and an unjust enrichment for the state under the circumstances to take advantage of "the release of the reverter clause" and that, therefore, the defendant now holds the premises upon a resulting trust for the plaintiffs. Thereupon judgment was rendered for the plaintiffs upon the first count.

Although the trial court bases its judgment on the broad ground of unjust enrichment, it is apparent that the enrichment could have been unjust for only one reason. There was present in the case no fraud, actual or constructive, no failure of consideration, no failure of any express trust created by the deed in question, nor any of the other situations which call for the application of the doctrine of unjust enrichment except possibly mistake. There was no mistake as to the effect of the deed. As will be pointed out later, the referee's report makes it clear that Fitch understood that the effect of the deed was to convey the reversionary interest. Fitch's purpose in giving the deed was to make more certain the continuance of federal aid. He believed that the continuance of federal aid was depend-

ent upon the conveyance of the reversionary interest. If this belief was mistaken it would follow that the state had been unjustly enriched and therefore held the reversionary interest for the benefit of the plaintiffs under a constructive trust. *Bronson* v. *Leibold,* 87 Conn. 293, 298, 87 A. 979; *Park Bros. & Co.* v. *Blodgett & Clapp Co.,* 64 Conn. 28, 34, 29 A. 133; *Home Owners' Loan Corporation* v. *Nasiatko,* 129 Conn. 19, 25, 25 A. 2d 661; *Beatty* v. *Guggenheim Exploration Co.,* 225 N. Y. 380, 386, 122 N. E. 378; Restatement, Restitution §§ 160, 163; 3 Bogert, Trusts & Trustees, § 474. If, on the other hand, the federal authorities were in fact demanding the relinquishment of the reversionary interest as a condition of the continuance of the federal grants, his belief was not mistaken, there was no unjust enrichment and the judgment is erroneous. Fitch owned the reversionary interest and could convey it if he saw fit to do so. *Battistone* v. *Banulski,* 110 Conn. 267, 269, 147 A. 820.

The burden of proving that Fitch's belief was mistaken was on the plaintiffs. There is no direct finding that the federal authorities were not insisting on the release of the reversionary interest. The report goes no further than to state that there was no evidence that they were requiring such a release. The judgment rests, therefore, solely on the finding that the only demand of the federal authorities was that title to the property should be vested in the state rather than in the private corporation. There was no evidence to support this finding. On the contrary all of the evidence tends in the opposite direction.

The only support for the finding suggested by the plaintiffs is that it was not until ten years later that the conveyance was made by the corporation to the state. This fact might lead to the inference that in 1917 the federal government was not requesting that a deed be

procured from either the corporation or Fitch. That, however, is not what the referee has found. He has found expressly that in 1917 a deed from the corporation was being demanded as a condition of further grants. The fact of the delay has no logical bearing one way or the other on the question whether the federal government was demanding the conveyance from Fitch.

On the other hand, it is not likely that the governor, acting through his executive secretary, would request Fitch to convey the reversionary interest to the state unless he was quite sure that such action was necessary to meet the federal demands. Moreover, the most reasonable explanation for the attitude of the federal authorities is that they deemed it improper to expend federal money on the upkeep of property title to which was partly in a private corporation and partly in a private individual. At least one of the considerations in their minds must have been that if the property were ever abandoned as a soldiers' home some private individual would to some extent reap the benefit of the expenditures. Every indication is, therefore, that they were demanding a transfer to the state of both the portion of the fee which was in the corporation and the portion which was in Fitch.

It is, of course, true that the referee was entitled to draw inferences of fact. Such inferences, however, should be drawn only from and bear a logical relation to other facts which have been proved. They should not be founded on facts which were merely surmised. *Rice* v. *Rice,* 134 Conn. 440, 447, 58 A. 2d 523; *Donovan* v. *Connecticut Co.,* 86 Conn. 82, 86, 84 A. 288. In the present case, there were no facts proved upon which the referee could reasonably predicate his finding that the only thing demanded by the federal authorities was a conveyance from the corporation. In other words,

upon the evidence, the finding must be held to be mere conjecture. It follows that the plaintiffs failed to satisfy the burden of proof which was upon them and failed to establish that the quitclaim deed was given under a mistake.

The plaintiffs in their brief argue that Fitch was mistaken in that he believed that the purpose of his deed was not to convey the reversionary interest at all but simply to put the state in a position where it could continue to receive the federal grants. That is, their claim is that the mistake was as to the effect of the quitclaim deed. The difficulty with that contention is that the referee did not find that such was the mistaken belief under which Fitch executed the deed. There is no finding that Fitch did not fully understand that the effect of his deed was to convey the reversionary interest and, indeed, the referee could not reasonably have so found, in face of the fact that the letter requesting the deed made it perfectly plain that it was the transfer of the reversionary interest which was needed, referring to that interest as probably being of no great value.

The trial court, upon the remonstrance, should have corrected the referee's report by striking out the finding that the only demand of the federal authorities was that title be vested in the state rather than in the corporation and the finding which is the corollary thereof, that the deed from Fitch was executed under the mistaken belief that it was a necessary step to make more certain that the federal grants would be continued.

There is error, the judgment is set aside and the case is remanded with direction to correct the referee's report in accordance with this opinion and to proceed thereafter in accordance with law.

In this opinion BROWN, C. J., and JENNINGS, J., concurred.

Baldwin, J. (dissenting).  The trial court based its judgment upon the conclusion of the referee that Francis S. Fitch would not have transferred his reversionary interest to the state "had he not acted under the mistaken belief that it was a necessary step to be taken in order that the property could be legally conveyed by the corporate trustee to the State and thus make more certain the perpetuity of the trust through the maintenance of the Federal aid."  This conclusion must stand unless it lacks reasonable and logical support in the subordinate facts or they, in turn, lack support in the evidence.  *Cohn* v. *Hartford*, 130 Conn. 699, 706, 37 A. 2d 237; *Gowdy* v. *Gowdy*, 120 Conn. 508, 509, 181 A. 462; *Liefeld* v. *Coffin*, 103 Conn. 279, 283, 130 A. 576; *Ferguson* v. *Cripps*, 87 Conn. 241, 245, 87 A. 792; Practice Book §§ 172, 352, 353; Maltbie, Conn. App. Proc., § 92.

The crux of the case stems from two sentences in a letter sent to Francis S. Fitch by the then governor's secretary.  One of the purposes in writing to Fitch was to advise him of a demand which federal authorities were making upon the state.  The sentences are these: "Last fall a question was raised by the national government as to the right of the state to receive this money [the $25,000 annual grant] because the title to the Home was in a corporation and not in the state.  In fact, the state was informed that unless title was placed in the state, we could receive no more federal aid."  Obviously, there is nothing in the foregoing which expressly suggests that the federal government was seeking an extinguishment of the reversionary interest.  Its concern appeared to be directed solely to, getting title out of the corporation.  In spite of this, the writer of the letter interpreted the demand to have a twofold aspect: First, a conveyance of the corporation's title, and secondly, conveyance of Fitch's interest.

The referee, on the other hand, making use of the same two sentences and fortifying himself by other available considerations, found that "[t]he *only* demand of the Federal Authorities was that title to the land and buildings should be vested in the State rather than in the corporation named as grantee in the deed of Benjamin Fitch" (italics supplied). The majority dispose of this vital finding with the comment that there was no evidence to support it. This, it seems to me, ignores the evidence and destroys the right of the trier to weigh it and draw such inferences as are proper and reasonable. The quoted finding was based upon an inference or a deduction from other facts. *City Bank & Trust Co.* v. *Ruthinian Greek Catholic Church,* 102 Conn. 609, 610, 129 A. 785; Maltbie, Conn. App. Proc., pp. 110, 123. The question is not whether this court would draw the same inference, for it is not within our power to usurp the power of the trier when legally exercised. *General Petroleum Products, Inc.* v. *Merchants Trust Co.,* 115 Conn. 50, 58, 160 A. 296. The question is whether the inference is one that is fairly warranted from other facts. *Fiala* v. *Connecticut Electric Service Co.,* 114 Conn. 172, 175, 158 A. 211; *Shaughnessy* v. *Morrison,* 116 Conn. 661, 664, 165 A. 553; *Rescigno* v. *Rosner,* 124 Conn. 253, 255, 198 A. 751.

It was perfectly logical and reasonable for the referee to have found that the title which the federal government demanded be transferred to the state was the title held by the corporation, to wit, a title subject to a trust and a reversionary interest. In making an annual grant to the state, the federal government was interested only in the continued use of the premises as a soldiers' home. If that use was stopped, so too would be the federal grant. Only upon that contingency would the reverter clause become operative. Accordingly, there was no impelling reason for the federal

government to demand the extinguishment of the reversionary interest. This fact, undoubtedly, accounts for the absence of any reference to the reversionary interest in the explanation of the federal demands contained in the two sentences to which reference has been made. It was quite reasonable for the federal government to question the payment to the state of a grant for the maintenance of the home, title to which was in the corporation. The reversionary interest might well have played no part in the minds of federal authorities. The motivating factor could well have been that the grant was being paid to the state when it did not, in fact, have any title to the premises.

Whether the governor's secretary misconstrued the extent of the federal demand by believing it required the reversionary interest to be lodged in the state was a question for the trier, and not this court, to decide. The referee was satisfied that the demand was misunderstood by the secretary, who unwittingly led Fitch into the same error. The referee's crucial finding, previously mentioned, was reasonable and found support in other facts as well as in the evidence, if the latter was required. If the finding under discussion cannot be stricken, even the majority, I take it, would concede that the state has been unduly enriched and should be required to make restitution.

In this opinion O'SULLIVAN, J., concurred.