FRANCIS R. DANAHER *v.* C. N. FLAGG AND COMPANY, INC.

LOISELLE, BOGDANSKI, SPEZIALE, PETERS and HEALEY, Js.

Argued February 14—decision released June 3, 1980

*William R. Moller,* with whom was *Thomas A. Weaver,* for the appellant (plaintiff).

*Kenneth W. Mango,* for the appellee (defendant).

LOISELLE, J. The plaintiff brought this action to compel the defendant corporation to register a transfer of stock endorsed and delivered to him by a former owner and to issue a new certificate to him as transferee. The parties are in substantial agreement with the facts stated in the memorandum of decision and the briefs.

On July 24, 1925, the defendant corporation issued certificate No. 5 for two shares of its common capital stock to M. A. Boisvert and recorded her name on the books of the corporation as the record

owner. On or about January 2, 1935, M. A. Boisvert endorsed the certificate in blank and delivered it to the plaintiff as payment for legal services rendered to her by the plaintiff. The plaintiff filed the certificate with other certificates in his law office. He did not request the corporation to transfer the stock to his name on its books at that time because he believed that the stock had little or no value, and that the defendant was in financial straits and could go bankrupt leaving him as a stockholder financially liable for the corporation's debts. M. A. Boisvert died on January 11, 1941.

On April 20, 1948, the defendant declared a four-for-one stock split, followed by a five-for-one stock dividend. This increased the two shares held in the name of M. A. Boisvert and represented by certificate No. 5 to eight shares upon the stock split, then to forty-eight shares with the stock dividend. The stock split and stock dividend accrued to the account of each stockholder of record immediately. On April 30, 1948, the corporation issued certificate No. 12 for eight shares and certificate No. 6 for forty shares to M. A. Boisvert as the record owner of certificate No. 5.

Sometime in 1948, the defendant contacted Boisvert's heirs and informed them that its corporate records showed her to be the owner of two shares of stock together with accrued stock splits and stock dividends. On March 29, 1949, her heirs applied to the Meriden Probate Court for letters of administration on her estate. The only assets of the estate were forty-eight shares of the defendant's stock. The administratrix of the estate informed the corporation that certificate No. 5 for the two shares of stock was missing and requested that a

new certificate be issued. The administratrix and all the heirs certified by affidavit to the loss, misplacement or destruction of the certificate. The corporation bought the forty-eight shares from the estate on April 14, 1949. These shares of stock became treasury stock and were retired in 1953.

On or about March 8, 1977, the plaintiff informed the corporation that he was in possession of certificate No. 5 and requested information with regard to the two shares of stock. This was the first time the plaintiff contacted the defendant regarding the stock since he obtained it in 1935. In September, 1977, the plaintiff requested the defendant to transfer the stock represented by certificate No. 5 to his name on the books of the corporation. He also demanded all stock splits and stock dividends which had been declared on the original certificate for two shares. The defendant refused and the plaintiff brought this action.

When Boisvert endorsed certificate No. 5 in blank and delivered it to the plaintiff, the plaintiff acquired title to the shares. General Statutes (Rev. 1930) §§ 3429, 3433, 3434;[1] 12 Fletcher, Cyclopedia of Corporations (Perm. Ed., 1971 Rev.) § 5497. Although the stock certificate provided on its face that the shares represented by the certificate could

---

[1]As all of the transactions occurred in 1949 and prior thereto, the Uniform Stock Transfer Act, embodied in §§ 3426 through 3448 of the Connecticut General Statutes Revision of 1930 is applicable to the disposition of this case. The act was not amended between 1930 and 1949.

Section 3429 provided: "STOCK TRANSFER. Title to a certificate and to the shares represented thereby may be transferred only by delivery of the certificate indorsed . . . in blank . . . by the person appearing by the certificate to be the owner of the shares represented thereby . . . . The provisions of this section shall be appli-

only be transferred "on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed," this was not a bar to the transfer of title between the parties. General Statutes (Rev. 1930) § 3429; 12 Fletcher, supra, § 5496. The only right that the plaintiff with title has against the corporation, in the absence of waiver or estoppel, is to have a transfer registered on the books of the corporation. 12 Fletcher, supra, § 5506. See *Fiala* v. *Connecticut Electric Service Co.*, 114 Conn. 172, 158 A. 211 (1932); 18 Am. Jur. 2d, Corporations § 428; annot., 22 A.L.R.2d 74.

To determine the rights of the plaintiff in the shares issued April 30, 1948, the stock split and the stock dividend must be considered separately.

When the stock split four-for-one, the corporation did not issue six additional shares to the record holder of certificate No. 5, but issued certificate No. 12 for eight shares instead, despite the requirement printed by the defendant on certificate No. 5 that the certificate must be surrendered if another certificate is to be issued in its place. The requirement of surrender is binding on the corporation as a continuing assurance to any title holder that the

cable, although . . . the certificate itself provide[s] that the shares represented thereby shall be transferable only on the books of the corporation . . . ."

Section 3433 provided: "DELIVERY PASSES TITLE. The delivery of a certificate to transfer title in accordance with the provisions of section 3429 is effectual . . . ."

Section 3434 provided: "EFFECT OF INDORSEMENT. The indorsement of a certificate by the person appearing by the certificate to be the owner of the shares represented thereby is effectual . . . though the indorser or transferor . . . has died or become legally incapacitated after the indorsement, whether before or after the delivery of the certificate . . . ."

stock will not be transferred on the corporation's books except on surrender of the certificate. Bona fide holders of certificates have a right to rely upon this assurance. *Bridgeport Bank* v. *N. Y. & New Haven R. Co.*, 30 Conn. 231, 270–71 (1861); 12 Fletcher, supra, § 5540; 18 Am. Jur. 2d, Corporations § 402. A corporation which disregards these provisions and issues a new certificate without surrender of the original one does so at its peril. 12 Fletcher, supra, § 5540. General Statutes (Rev. 1930) § 3445 provides that a corporation may issue a new certificate in place of a certificate which is claimed to have been lost or destroyed, but §§ 3445 and 3446 make clear that the corporation does so subject to the right of the title owner to have the original certificate transferred to him.[2]

---

[2] General Statutes (Rev. 1930) § 3445 provided: "LOST CERTIFICATE; ISSUE OF NEW CERTIFICATE. Each corporation may issue a new certificate for stock . . . in place of any certificate . . . issued by it which is claimed to have been lost or destroyed, and the directors may, in their discretion, require the owner of a lost or destroyed certificate . . . or his legal representatives, to give a bond to the corporation in such sum as the directors may direct, not exceeding twice the value of the stock . . . to indemnify the corporation against any claim that may be made against it on account of the issue of such new certificate . . . and a new certificate . . . may be issued without requiring any bond when, in the judgment of the directors, no bond is necessary."

General Statutes (Rev. 1930) § 3446 provided: "ISSUE OF NEW CERTIFICATE BY ORDER OF COURT. When a certificate has been lost or destroyed, a court of competent jurisdiction may order the issue of a new certificate therefor . . . upon satisfactory proof of such loss or destruction and upon the giving of a bond with sufficient surety to be approved by the court to protect the corporation or any person injured by the issue of the new certificate from any liability or expense which he may incur by reason of the original certificate remaining outstanding. . . . The issue of a new certificate under an order of the court, as provided in this section, shall not relieve the corporation from liability in damages to a person to whom the original certificate has been or shall be transferred for value without notice of the proceedings or of the issuance of a new certificate."

When the defendant issued to M. A. Boisvert the certificate for eight shares in lieu of two shares on the stock split without return of the original certificate No. 5, it acted subject to the right of the plaintiff, the title owner, to require transfer of those two shares to his name. The defendant argues that the delay of forty-two years on the part of the plaintiff to demand transfer of these shares constitutes laches and he is therefore estopped from demanding a transfer of certificate No. 5 in his possession. " 'An estoppel rests on the misleading conduct of one party which operates to the prejudice of another.' " *Bianco* v. *Darien,* 157 Conn. 548, 555, 254 A.2d 898 (1969); *Ackley* v. *Kenyon,* 152 Conn. 392, 397, 207 A.2d 265 (1965). The fact that forty-two years had passed before the plaintiff requested transfer does not in and of itself constitute laches. *Bozzi* v. *Bozzi,* 177 Conn. 232, 239, 413 A.2d 834 (1979); 27 Am. Jur. 2d, Equity § 163. Laches consists of an inexcusable delay which prejudices the defendant. *Bozzi* v. *Bozzi,* supra, 239; *Paiva* v. *Vanech Heights Construction Co.,* 159 Conn. 512, 519, 271 A.2d 69 (1970); *Sarner* v. *Fox Hill, Inc.,* 151 Conn. 437, 444, 199 A.2d 6 (1964); *Kurzatkowski* v. *Kurzatkowski,* 142 Conn. 680, 684–85, 116 A.2d 906 (1955). The trial court concluded that the plaintiff was guilty of laches and that he was estopped to demand a transfer. A conclusion by the trial court that a party has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law. *Bozzi* v. *Bozzi,* supra, 239–41; *Leary* v. *Stylarama of New Haven, Inc.,* 174 Conn. 217, 219, 384 A.2d 377 (1978); *Kurzatkowski* v. *Kurzatkowski,* supra, 684. The

trial court's conclusion that the forty-two year delay was inexcusable cannot be attacked. It is difficult, however, to see any resulting prejudice.

When the corporation declared a stock split in 1948, it divided the outstanding number of shares by four and reduced their par value from $100 to $25. There was no change of substance in the corporation's capital structure, only a change in form. Each stockholder's proportional interest and the total value of his investment remained unchanged. *Keller Industries, Inc.* v. *Fineberg*, 203 So. 2d 644, 646 (Fla. D.C. 1967); *Geier* v. *Mercantile-Safe Deposit & Trust Co.*, 273 Md. 102, 119–20, 328 A.2d 311 (1974); *Egavian* v. *Egavian*, 102 R.I. 740, 746, 232 A.2d 789 (1967); 11 Fletcher, supra, § 5362.1; 12 Fletcher, supra, § 5418.14. The plaintiff's failure to request transfer of the shares of stock for forty-two years in no way prejudiced the defendant with regard to the stock split, because the split, unlike the stock dividend, did not affect the corporation's capital. No earnings were capitalized.

The corporation issued certificate No. 12 without surrender of certificate No. 5 at its peril. When it repurchased certificate No. 12 from Boisvert's estate, the corporation knew that it had been issued without the return of certificate No. 5 which the heirs claimed had been lost and knew that the purchase might be subject to the right of transfer by a purchaser for value. To the extent that the corporation changed its position, it did so with knowledge of these risks and of the statutory rights of a true owner. Under these circumstances, the plaintiff is not estopped from seeking and receiving the transfer of certificate No. 5 for eight shares of stock in the defendant corporation.

Other principles apply when reviewing the corporation's purchase of shares previously issued to M. A. Boisvert as a stock dividend. General Statutes (Rev. 1930) § 3431 provided that "[n]othing in [the Uniform Transfer Act] shall be construed as forbidding a corporation to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends . . . ." The statute is consistent with the general rule that "[t]he corporation is not bound to look beyond its books to determine who is entitled to dividends, but may safely pay them to the registered shareholders, and will be protected in such payment notwithstanding transfers made before the dividend was declared, but which were not entered on its books and of which it had no notice . . . ." 12 Fletcher, supra, § 5504.[3] When the five-for-one stock dividend was declared on April 20, 1948, M. A. Boisvert was the record owner of eight shares for which the defendant had not yet issued any replacement certificate. The defendant was therefore obliged to issue the stock dividend to her under § 3431. When the defendant purchased the forty-eight shares from Boisvert's estate, however, on April 14, 1949, it had knowledge, as the corporation which issued the stock dividend, that the dividend was declared and issued on shares which had been replaced without surrender of the original certificate. As a matter of law the plaintiff had a rightful claim against Boisvert to the stock dividends issued in 1948 because he was the legal owner of the shares upon which the dividend was declared.

---

[3] Article 8 of the Uniform Commercial Code, which superseded the Uniform Stock Transfer Act, continues to protect the issuer by treating the registered owner of shares as the person entitled to receive dividends prior to due presentment for registration by a transferee. General Statutes § 42a-8-207 (1).

11 Fletcher, supra, § 5376; 19 Am. Jur. 2d, Corporations § 890. Although the plaintiff had no legal duty to record promptly the change of ownership on the books of the defendant, the plaintiff could not stay silent knowing that the stock was registered in the name of M. A. Boisvert and that this might mislead a purchaser to his detriment. " 'So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable and operates as an estoppel against the assertion of the right.' . . ." (Citation omitted.) *Bassett* v. *City Bank & Trust Co.*, 116 Conn. 617, 629–30, 165 A. 557 (1933). Although the defendant was required to issue a replacement certificate only when the original certificate had been returned, it did in fact act in good faith when it transferred the eight shares of stock to M. A. Boisvert upon the receipt of the affidavit that certificate No. 5 had been lost. It also acted in good faith, without notice of any claim, when it purchased from the estate of Boisvert the forty shares issued as a stock dividend to the owner of record. The corporation materially changed its position and, by the time that this action was brought, it could not be restored to its former position. The plaintiff is therefore estopped by his own inaction from claiming a transfer of the stock dividend to his name.

It is true that the corporation could have demanded a bond for twice the value of the stock at the time from the heirs in accordance with the

provisions of General Statutes (Rev. 1930) § 3445. Even if this had been done, however, the doctrine of estoppel would still apply under the facts and circumstances of this case, because the defendant acted in good faith when it changed its position and the plaintiff's inordinate delay placed the corporation in such a position that it could not be restored to its former state.

The plaintiff is entitled to have the defendant corporation transfer on its books the eight shares of stock representing the stock split of the shares represented by certificate No. 5. If such a transfer will create an overissue under General Statutes (Rev. 1930) § 3382, then he is entitled to money damages.[4] The plaintiff is not entitled to a transfer of the forty shares issued in the stock dividend.

There is error, the judgment is set aside and the case is remanded with direction to render judgment in conformity with this opinion.

In this opinion SPEZIALE, PETERS and HEALEY, Js., concurred. BOGDANSKI, J., concurred in the result.

---

[4] Although this action was brought in 1977, under General Statutes § 42a-10-102(1) the plaintiff's remedies are determined by the law which prevailed before October 1, 1961, the effective date of the Uniform Commercial Code, Article 8.