[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case the plaintiff, a financial institution, seeks strict foreclosure of a mortgage from the defendants, Thomas P. Martin and Patricia Martin, dated June 6, 1987 and recorded June 10, 1987, which was given to secure a $45,000.00 Revolving Loan Agreement note of that same date. The defendant Centerbank claims an interest in the premises by virtue of a mortgage dated October 3, 1988 and recorded October 11, 1988, in the amount of 212,000.00, which it denies is subsequent and subordinate to the plaintiff's mortgage. In its special defense Centerbank alleges that on October 7, 1988, the Martins paid in full the plaintiff's note and mortgage in consideration of the plaintiff's promise to execute and deliver to them a release of the mortgage. That release was never provided and subsequently the Martins continued to draw on the line of credit that was secured by the unreleased mortgage.
The total amount due to the plaintiff from the Martins on their $45,000 note, for principal and interest is $60,459.03, plus $11.75 per day interest beginning November 9, 1993. The Martins have no equity of redemption in the premises. On November 26, 1990 the Martins disclosed that they had no defense to the plaintiff's action.
The issue in this case is whether Centerbank's mortgage is subordinate to the plaintiff's because it was given after the plaintiff's mortgage, which has never been released. The answer to this question depends on whether the delivery to the plaintiff on October 7, 1988 of the full amount then owed by the Martins entitled them to a release of their mortgage. The plaintiff asserts that it did not, because the mere fact of reduction of the loan balance to zero in a revolving loan agreement CT Page 1279 does not terminate that agreement absent a specific request to terminate. Centerbank claims that the payment in full by the Martins on October 7, 1988 was made on condition that it constituted a payoff of the mortgage and that a release of the mortgage would be provided. Centerbank claims that because the plaintiff breached that promise, the plaintiff be estopped from asserting priority based on equitable principles of estoppel and equitable subrogation. Centerbank also claims that Household's failure to execute a release violated its own contract with the Martins as well as Conn. Gen. Stat.49-8 which states as follows:
 (a) The mortgagee or a person authorized by law to release the mortgage shall execute and deliver a release to the extent of the satisfaction tendered before or against receipt of the release: (1) upon satisfaction of the mortgage. . . .
The plaintiff denies that it ever promised to provide a release, and claims that it was obligated under the terms of its agreement with the Martins to honor checks they wrote on their revolving equity credit line. The plaintiff further claims that "Implicit or express conditions of release of the mortgage were full satisfaction of the outstanding balance and return of the special checks. Both conditions needed to be satisfied simultaneously." The checks were not returned.
Paragraph 20 of the mortgage to the plaintiff provides as follows:
 20. Release. Upon payment and discharge of all sums secured by this Mortgage, this Mortgage shall became null and void and Lender shall release this Mortgage.
The Court concludes that this provision, absent a request from the mortgagors, does not require delivery of a release, because the nature of a continuing equity credit line contemplates that varying amounts will be owed up to the maximum credit line extended, in this case, $45,000.00. It's not reasonable to interpret this agreement to require the plaintiff to provide a release CT Page 1280 without a request if the loan balance becomes zero, because the loan is a revolving loan. However, if the loan balance becomes zero, and the mortgagors request a release, either expressly or impliedly, it must be provided. (Emphasis supplied.)
In this case the parties vigorously dispute whether the Martins requested the release, and whether the plaintiff agreed to furnish one.
When the mortgage application of the Martins was approved by Centerbank, the bank designated Attorney Edward Hannafin as the closing attorney for the transaction, and Attorney Hannafin also represented the Martins in this matter. His secretary (also his wife) was an experienced legal secretary who had worked on hundreds of real estate closings, including approximately one hundred fifty that were revolving credit loans similar to the one in question. To prepare for this closing she called plaintiff's office and was given over the phone the payoff figure and the per diem interest amount. She also asked for a release of mortgage, and was not told that this request had to be in writing. After the closing, she again asked on the phone for the release and was told it would be forthcoming. She also told the defendant, Patricia Martin, that she would have to stop using the checks and that she should mark them `void' and return them to the plaintiff.
When the title policy was issued to Centerbank effective 10/11/88, it showed Centerbank as first mortgagee (oral testimony of Heidi Hannafin). Attorney Hannafin would not have closed this refinancing loan from Centerbank without a promise of the Household release, because without it, Centerbank wouldn't have a valid first mortgage as they required.
The court concludes also that the standard custom between attorneys and lenders such as the plaintiff, is that a request by an attorney for payoff figures and a per diem amount is a request for a release upon payment. Attorney Hannafin delivered a check in person to the plaintiff's office on 10/7/88, in the amount of $46,923.02, which represented the full amount owed by the Martins, including interest, through 10/7/88. Attached CT Page 1281 to the check was a cover letter stating that what was being delivered was a `check for mortgage payoff in the amount of $46,923.02 through 10/7/88'. By letter of October 7, 1988, Attorney Hannafin sent the town clerk of South Kent a mortgage release from Danbury Savings Bank (the mortgage that was being refinanced), a check for $50.00 and a note typed on the transmittal letter that `The Release of Mortgage From Household Realty Corp, will be forthcoming. Please credit the $5.00 overage and use for recording Release of Mortgage upon receipt of same.'
When Attorney Hannafin delivered the payoff check to the plaintiff's office, he asked Janet Marcklewski, the person who took the check, to send him the release. She had been employed by the plaintiff for three months and this was her first involvement with a payoff; in fact she was probably still in her training period. Also after the closing, Mrs. Hannafin called the plaintiff and asked for the release.
The release was never provided; it was never requested in writing, and Attorney Hannafin did not follow through to make sure that he got it. It wasn't until late 1990, when the plaintiff started this foreclosure action, that this came to light. In October, 1990, Centerbank started a foreclosure action against the Martins on their 1988 mortgage. In the complaint, an allegation was made that the Household mortgage was prior in right to Centerbank's lien, and was not affected by Centerbank's foreclosure action. This seems to be an admission by Centerbank, but the court is satisfied by the testimony of Attorney Edward Rosenblatt, who filed the foreclosure complaint on Centerbank's behalf, that this allegation was made because his title search showed the presence on the land records of the plaintiff's mortgage, which was unreleased and prior in time to the Centerbank mortgage. A few days after filing this complaint, Attorney Rosenblatt found out about this foreclosure action by the plaintiff, and was told that the plaintiff had been paid in full. The court does not consider this admission to be a binding or conclusive admission that the plaintiff's mortgage has priority over Centerbank's.
The court finds that the plaintiff promised Attorney CT Page 1282 Hannafin and his secretary, representatives of Centerbank and the Martins, that they would provide a release of the Martin mortgage, and having been induced to believe this and acting in reliance upon these promises, Attorney Hannafin and Centerbank closed on that loan, to the detriment of Centerbank. The plaintiff therefore is estopped from claiming priority over the Centerbank mortgage. See West Hartford v. Rechel, 190 Conn. 114, 121
(1983), and Kimberly-Clark Corporation v. Dubno,204 Conn. 137, 148 (1987).
The court reaches the same conclusion based on the doctrine of equitable subrogation. Centerbank paid off Household to protect Household's own interest; Centerbank did not act as a volunteer; the debt paid was one for which Centerbank was not primarily liable; the entire debt was paid, and subrogration [subrogation] will not work any injustice to the rights of others. See Han v. U.S.,944 F.2d 526, 529 (9th Cir. 1991). Therefore Centerbank is equitably subrogated to the plaintiff's position as lienholder, thereby defeating the plaintiff's claim of priority.
As a further basis for determining that Centerbank's interest is prior to the plaintiff's, the court holds that the plaintiff had a contractual obligation under Paragraph 20 of the mortgage (Pl.'s Ex. B) to release the mortgage, if there was payment of all sums secured and if there was a request either express or implied for the release. Since both conditions were fulfilled, it would be inequitable to give that mortgage priority over Centerbank's mortgage.
Because of the nature of the loan in question, a revolving credit equity loan, Section 49-8 of the Conn. Gen. Stat. mandates execution and delivery of a release if a request, express or implied is made. Since this court has held that such a request was made, both expressly and impliedly, the statute is applicable, and equity requires the court to treat the mortgage as having been released for the purposes of determining priority.
Concerning the issue of laches raised by the plaintiff, the court finds that Centerbank's actions do not constitute laches. CT Page 1283
 Laches consists of an inexcusable delay which prejudices the defendant. Danaher v. C.N. Flagg Co., 181 Conn. 101, 107
(1980).
It wasn't until this suit was brought in September 1990 that Centerbank realized that the plaintiff was claiming priority over the Centerbank mortgage. By a special defense dated November 30, 1990, Centerbank alleged than the plaintiff had promised in October 1988 to provide a release of mortgage. That is not an unreasonable or inexcusable delay in asserting Centerbank's claim.
Judgment is rendered for the defendant Centerbank. Judgment of strict foreclosure is rendered for the plaintiff against the defendants Thomas P. Martin and Patricia Martin. A law day of April 1, 1994 is set, an attorney's fee of $2,500.00 is awarded to the plaintiff. The court determines that the fair market value of the property is $235,000.00. An appraisal fee is allowed in the amount of $350.00.
RICHARD A. WALSH, J.